**WUNDERLE v. McCAUGHN, Formerly Collector of Internal Revenue.***

District Court, E. D. Pennsylvania. June 5, 1929.

No. 13938.

quested and received advances which were made and treated as loans and charged against his account as such. While no current record of credits due Carson was made, it was the intention of both plaintiff and Carson to keep the account even, and to make the advances approximate the amount of the bonuses. During the greater part of the time this arrangement was in force, the plaintiff was, owing to bad health, absent from active participation in the business, and was also unwilling to acquaint other employees with the fact of this arrangement with Carson. As a result, the account remained unbalanced until 1917, when, upon balancing the account, it was discovered that Carson had been overpaid, the amount of which overpayment on January 1, 1918, was ascertained to be $4,553.82.

Carson died November 17, 1918, at the age of 59 years. He had been in the plaintiff's employ for over 44 years, and never had worked for any one else. He left an estate of about $12,000. The plaintiff did not attempt to enforce against Carson's estate any claim arising from the overpayments; the following reason being given in the statement of claim: "The situation which revealed the indebtedness of an old employé was the result of plaintiff's careless business methods, caused largely by years of enforced absence from business through illness. He felt that he was morally to blame and that he had no moral right to press the claim against the widow and children of an old employé who had just died after spending his entire life in the service of the plaintiff. Therefore, in order to discharge a moral obligation to him and to his widow and children, the plaintiff credited John F. Carson's account with $4,553.82 as a pension and as additional compensation for his long and faithful service, thus canceling the claim."

The first question involved in the case is whether or not the claim for refund filed by the plaintiff as a preliminary to bringing this suit was a sufficient compliance with the requirement of the statute. It was upon treasury form 843, together with an affidavit which was incorporated by reference. On the form, the following is the only reference to this claim: "Also, an item of $4,553.82, representing a bad debt was not allowed as a deduction in determining the net income." In the attached affidavit the essential facts of Carson's indebtedness were set forth, together with a brief argument presenting the view that the plaintiff's cancellation of the indebtedness of Carson's estate was the recognition

Robert J. Sterrett, of Philadelphia, Pa., for plaintiff.

George W. Coles, U. S. Atty., of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge. The plaintiff has brought this suit to recover $3,096.61, being a portion of an additional income tax assessed for the year 1918 and paid under protest. The additional assessment was based upon the rejection by the Commissioner of a deduction claimed, in the amount of $4,553.82 by the taxpayer. An affidavit of defense in the nature of a demurrer admits the facts set forth in the statement which, summarized, are as follows:

The plaintiff was a candy manufacturer and for many years had in his employ one John F. Carson. Beginning January 1, 1892, the plaintiff agreed to pay Carson, in addition to his regular wages as a foreman confectioner, a royalty, based on sales of certain articles of candy which Carson had designed, together with an annual bonus based upon a pro rata share of the earnings of the business. This agreement was in writing, but, because of the plaintiff's desire to keep it secret, was not noted in the books of account, and credits due Carson on account of the annual bonuses were not entered in the books or even calculated until 1917. From 1892 to 1917 Carson from time to time re-

of a moral obligation, referring to Herschel v. Jones, 1 B. T. A. 1226, and concluding: "Under the circumstances, we claim a deduction of $4,553.82, on account of this bad debt for the year 1918."

■■ I am of the opinion that where, as in this case, the deduction of a specific item of credit claimed but subsequently disallowed by the Commissioner is the basis of the claim, a claim for refund, setting forth fully and in detail all the facts and circumstances giving rise to the claim, is a sufficient compliance with the statute, and, further, that the fact that an erroneous legal theory is presented, or, more specifically, that the deduction is claimed as a bad debt when it is really something else, does not destroy the legal sufficiency of the claim for refund. The requirement of the statute (26 USCA § 156) is "a claim for refund or credit * * * according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof. * * * " The regulations in force require that "all the facts relied upon in support of the claim shall be clearly set forth under oath." In Tucker v. Alexander, 275 U. S. 228, 48 S. Ct. 45, 72 L. Ed. 253, the Supreme Court said: "The statute and the regulations must be read in the light of their purpose. They are devised, not as traps for the unwary, but for the convenience of government officials in passing upon claims for refund and in preparing for trial." In the opinion of the lower court in the same case (reversed upon the question of waiver, but not disapproved upon the point here involved) it was pointed out that the principal purpose of the condition was to afford the Commissioner an opportunity to correct errors made by his office. I am in accord with the view expressed in Warner v. Walsh (D. C.) 24 F. (2d) 449, and the opinion of Union & New Haven Trust Co. v. Eaton (D. C.) 20 F.(2d) 419, that, where the Commissioner is apprised of all the material facts, it is immaterial that the theory on which relief is asked is not set out. Nor, I think, is it material that the wrong theory is set out. That is particularly true in a case like this in which the claim involves a narrow and sharply defined issue. Union Trust Co. v. McCaughn, 24 F.(2d) 459, decided by this court, involved the question of waiver and is not controlling, but it emphasizes the important consideration that the Commissioner had full opportunity to reconsider and modify the ruling of his office, had he deemed that ruling erroneous.

■ Coming to the merits of the question, section 214(a)(1) of the Revenue Act of 1918 (40 Stat. 1066) provided that in computing the net income there shall be allowed as deductions "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered. * * * " Under this provision, in addition to regular salaries, separate regulations provide for bonuses and for pensions, setting forth the conditions under which each class of payments to employees may be allowed. Immediately after Carson's death, the plaintiff was under the impression that he had left no estate and that the debt was a bad debt. Thereafter he discovered that it was collectable, but nevertheless determined not to attempt to collect it, but to credit Carson's estate with the full amount in consideration of his long and faithful service. This action was taken in good faith and was intended as an additional compensation for services actually rendered. The forgiveness of the indebtedness may thus be classified as a bonus, though it is not necessary to its allowance as a deduction that it come directly within the limits of that term as defined in the regulations. The important thing is that it is a bona fide expense incurred in carrying on the business and a reasonable allowance for compensation for personal service actually rendered, within the meaning of the statute.

■ The defendant makes the contention that, if it is a bonus, it is not allowable for the year in which it was charged off, but must be prorated over the years during which the services were rendered. This would be true if it had been payable as a result of some legal obligation or promise incurred or made in connection with the employment, but is not true where, as in this case, there is no such obligation existing. This claim for deduction must not be confused with the bonus which Carson drew during his lifetime as a result of a definite written agreement. That is not the subject of any claim. The defendant was under no obligation of any kind to make this allowance to Carson's family. In fact, he did not know that a situation existed which would place him in a position to make it. When he found out the facts he then, and not sooner, allowed the credit. I therefore hold that the deduction may be made in the year in which the credit was allowed to Carson's family.

The statement of the claim does not definitely show that the taxpayer made the allowance in question in the year 1918. Both parties on the argument have assumed that such is the fact. If it should appear that the allowance was made in some later year, of course the deduction could not be allowed for the year 1918, but would have to be taken in the year in which it was actually made. I will permit the statement to be amended by setting forth the year when the taxpayer allowed the credit to Carson's estate. If the defendant wishes to controvert this fact, he may do so. The statement is held sufficient. The affidavit of demurrer is overruled, and the defendant directed to answer within 15 days.