## ART METAL CONST. CO. v. UNITED STATES.
### No. 213.

Circuit Court of Appeals, Second Circuit.
Feb. 2, 1931.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y. (C. M. Charest, Gen. Counsel,

Bureau of Internal Revenue, and Ottamar Hamele, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for the United States.

Slee, O'Brian, Hellings & Ulsh, of Buffalo, N. Y. (Ralph Ulsh, of Buffalo, N. Y., of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

In 1919 the plaintiff filed a return for its income and profits tax, showing more than five hundred thousand dollars to be due, all of which it paid in that year. Later, at the request of the Commissioner it filed four waivers; the first on December 18, 1923, which expired on December 18, 1924; the next on January 19, 1925; the other two within the time of expiration of the preceding one. Thus, with the exception of the interval between December 18, 1924, and January 19, 1925, the extension of the Commissioner's time was continuous up to December 31, 1927. On February 26, 1924, while the first waiver was outstanding, the plaintiff filed a sworn claim for refund, upon the form prescribed, in which it stated that it was engaged in manufacture, that the claim related to its income and profits tax, which had been assessed at the figure returned, and that it requested a reduction of one dollar or more as the amount to be refunded. The only further contents of the claim was as follows: "This claim is filed pursuant to the provisions of section 252 of the Revenue Act of 1921, as amended by the Act of March 4, 1923, for the refunding of any sum which, by reason of future Court Cases, Treasury Rulings, or for other reasons, it may appear has been illegally or erroneously assessed or collected. The purpose in submitting this claim is to protect the taxpayer's rights in respect of the time within which such claims must be filed." At this time the plaintiff was maintaining that it was entitled to a special assessment of its invested capital for the year 1917, under the forerunner of section 328 of the Revenue Act of 1918 (40 Stat. 1093), but, as will be observed, the claim did not assert such a right for 1918.

Later, the Commissioner took up certain adjustments of its taxes, to which the plaintiff objected, and the waiver of January 19, 1925, already mentioned, was given in response to a letter from the Commissioner that his time to reassess would soon expire, and that he must have more time within which to consider the matter. Nothing further was done before April 1, 1925, the day when the plaintiff's right to make any claim for refund expired; but on April twenty-first, the Commissioner proposed to assess additional taxes for 1918 and 1919, and the plaintiff protested on May twenty-first, asking leave to file a brief. This it did on July sixth, objecting to the added taxes, and for the first time demanding a special assessment for 1918, for reasons then set forth. It may be assumed that this was an adequate claim for a refund on that ground, if in season.

As above stated, the Commissioner thereafter twice asked for further waivers, each time referring to the proposed added assessment, and once, more generally, "to the determination of your correct tax liability." The Board of Tax Appeals decided in July, 1926, that the plaintiff was entitled to a special assessment for 1917. Eventually in August and December, 1927, the Commissioner assessed a deficiency for 1919—not here in question—and found that the plaintiff had been over-assessed for 1918, because entitled to a special assessment, as in 1917. He, however, decided that the claim for refund, first made in July, 1925, was too late, disregarding that of February, 1924.

Under the statutes as they existed in February, 1924, the plaintiff's time to file a claim for refund was limited to five years after the return was filed (section 252 of the Revenue Act of 1921, as amended by the Act of March 4, 1923, § 1, 42 Stat. 1504). Thus the original claim was timely. This period was extended by Revenue Act of 1926, § 284 (g), 26 USCA § 1065, until April 1, 1925, in cases where the taxpayer had filed a waiver; and it would have been further extended for a year more, had the second waiver been given "before the expiration of the period" of the first, which was, however, not the case, because of the hiatus mentioned above. Hence any claim for refund was due before April 1, 1925, and the only claim filed in time was that of February, 1924. Unless this could be amended by the claim set up in the brief of July 6, 1925, there was no seasonable claim, and the Commissioner was right, since no action of his could toll the statute, once the limitation had elapsed.

The supposed claim was no claim at all; it was a mere caveat, an attempt to reserve the taxpayer's right at some later time to file a claim, should something turn up, either because of a change in the rulings of the courts, or of the Department, or for any other reason which might lead him to suppose that he

could get back what he had already paid. We are not therefore dealing with a claim ineffectually couched, which advised the Commissioner that the taxpayer had come to doubt the validity of any part of the tax. In such cases we may assume arguendo that much latitude would be allowed, not only to amend as to the amount demanded, but to amplify the grounds of the claim, and perhaps to set out others.

The answer is made that the Commissioner must have known that a special assessment was in mind, because that had already been bruited for the year 1917, and it could not be supposed that what was demanded for one year, would be abandoned for the next. So far as inferences are to count at all, the direct opposite was at least as reasonable. If the taxpayer, having already raised the question of a special assessment for 1917, meant by his claim for the next year to ask the same treatment, nothing would appear less likely than that he should then omit it. Perhaps a mere reference would have served, but it was surely most natural to suppose that he did not then intend to press what he had every reason to assert. Special assessments vary with the circumstances of the taxpayer; they are especially within the discretion of the Commissioner, and the facts of one year are not necessarily the facts of the next.

Moreover, we cannot agree that such a claim can be pieced out by matter in pais, certainly when it is no more than a general reservation of all future claims. Whatever the purpose of the statute, it is at least to advise the Commissioner that the taxpayer intends by it to assert that a part of his tax was never due. To allow him to substitute, not a claim, but a warning that he may in the future make a claim—which is all on any theory that the supposed claim was—substantially dispenses with the statute altogether. Presumably, it was to avoid exactly such resulting uncertainties that the act and the regulations required something definite enough for action. The claim called for, and indeed admitted, no action at all. Therefore the Commissioner was not bound to return it. It bore no evidence that the plaintiff had any present complaint in mind; there was no intimation until after April 1, 1925, that anything had happened which had caused it to doubt any item of the tax which it had itself computed and paid. Patently, the claim was nothing but an effort to extend the time which the statute had given; an effort which the Commissioner was no more bound to repudi-

ate, than if it had expressly asserted such a right, as perhaps indeed it did.

Again, we cannot see what difference it made that under existing rulings the claim would have been rejected, had it been a claim at all. A taxpayer who returns and pays a tax always thinks that he must pay it as the law is; else he would act otherwise. He is given a period in which to repent his complaisance, but its limit confines him; so Congress has determined. Within it he must make up his mind what to challenge; his remedies are at hand, if he wishes in the courts to reverse the rulings of the Commissioner, or to persuade him to recant. It will not entitle him to an extension that, so far as he can see, he must be unsuccessful in limine; he must present and prosecute his claim, while he is in the way with his adversary. Anything else is merely a contrivance to escape what, for good or ill, Congress has seen fit to enact.

It must be confessed that the authorities are not in unison. It is always a harsh thing to sustain a statute of limitations against a conceded claim; doubly so, perhaps, in the case of taxes—exactions, whose grounds courts have always scrutinized narrowly. No doubt this accounts for the lengths to which the right of amendment has at times been pushed. Nevertheless, we find no authoritative decision against what, we cannot help thinking, is the plain purport of the law.

In Tucker v. Alexander, 275 U. S. 228, 48 S. Ct. 45, 72 L. Ed. 253, the claim had set forth two grounds of illegality, and when the action came on for trial the tax was contested upon a third. The government counsel at the trial stipulated that if the suit was good on the merits, the plaintiff should recover, notwithstanding the necessity of amending his claim; all this apparently took place before the time to file the claim had expired. The case is clearly to be distinguished, in the first place because a claim had been filed for refund of a specific part of the tax, and the amendment merely set up a new ground; second, because there was an express stipulation by the trial counsel; last, because, as we have said, the limitation had not yet expired—at least this appears to have been true from the opinion in the court below. (C. C. A.) 15 F. (2d) 356. See, also, Maryland Casualty Ins. Co. v. U. S., 251 U. S. 342, 354, 40 S. Ct. 155, 64 L. Ed. 297.

It is quite true that in Felt & Tarrant Mfg. Co. v. U. S., 37 F. (2d) 977 (Ct. Cl.), a claim, in as general language as that before us, was held sufficient, and that the other de-

cisions of that court [Feather River Lumber Co. v. U. S., 66 Ct. Cl. 54; Jonesboro Co. v. U. S., 66 Ct. Cl. 320; Taylor-Lockwood Co. v. U. S. (Ct. Cl.) 45 F.(2d) 284, December 8, 1930], can be reconciled with the ruling, though by somewhat close distinction. Swift & Co. v. U. S., 67 Ct. Cl. 322, is clearly different. However, in Ordway v. U. S., 37 F. (2d) 19, we held a similar claim to be a nullity in an especially aggravated case; and U. S. ex rel. Endicott v. Mellon, 39 F.(2d) 505 (App. D. C.), is to the same effect. There the Commissioner had assessed an added tax which the taxpayer filed a claim to abate. In it he inserted a claim for refund of one dollar, and so far as appears, never made any effort to amend. The claim was thought bad, though it is difficult to see why, if the plaintiff here is correct, since a claim for one dollar would ordinarily be read as comprising an unknown sum. The addendum in the case at bar, not present in that case, seems to us to be immaterial. Red Wing Malting Co. v. Willcuts, 15 F.(2d) 626, 49 A. L. R. 459 (C. C. A. 8), while scarcely a ruling, points the same way.

In the District Courts the decisions are also divided. Leach v. Nichols, 42 F.(2d) 918; Lehigh, etc., Co. v. U. S., 38 F.(2d) 637; Union, etc. Co. v. Eaton, 20 F.(2d) 419; Warner v. Walsh, 24 F.(2d) 449; Id., 27 F. (2d) 952; and Wunderle v. McCaughn, 38 F.(2d) 258, make for the plaintiff, though several of them are certainly distinguishable. Meinrath Brokerage Co. v. Crooks, 28 F. (2d) 991; Phoenix Glass Co. v. U. S., 34 F. (2d) 217, and Connell v. Hopkins, 43 F.(2d) 773, look the other way; though here again there is room for distinctions.

Judgment reversed; petition dismissed.