## SWEDISH IRON & STEEL CORPORATION v. EDWARDS.

District Court, S. D. New York.

Aug. 27, 1932.

336

Ten Eyck R. Beardsley, of New York City, for plaintiff.

George Z. Medalie, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for defendant.

GODDARD, District Judge.

This action challenges the correctness of a tax assessed and collected for the fiscal year ending April 30, 1918. The tax was assessed against Swedish Iron & Steel Corporation, a New York corporation organized in 1907, which for convenience will hereafter be referred to as corporation No. 1. The plaintiff asserts that it is the same taxpayer as corporation No. 1, and contends, in reliance upon sections 200 and 204 (b) Revenue Act of 1918 (40 Stat. 1058, 1060), that it was over-assessed for the year in question because the Commissioner refused to deduct a net loss incurred by the plaintiff for the calendar year 1919. The defendant denies that the plaintiff is the same taxpayer as corporation No. 1, and contends that, in any event, the year ending April 30, 1918, was not "the preceding taxable year" to that during which the net loss was incurred, within the meaning of the statute involved. In addition, the defendant urges that the suit cannot be maintained because plaintiff's claim for refund did not specify the ground for relief which is now relied upon.

For an understanding of these opposing contentions, a further statement must be made of the facts established at the trial. By an agreement dated October 2, 1918, and filed in the office of the secretary of state of New York on October 8, 1918, between corporation No. 1 and Federal Tool & Alloy Steel Corporation, a New York corporation organized in 1917 and hereafter, for convenience, referred to as corporation No. 2, it was agreed to "merge and consolidate such corporations into a single corporation," and it was mutually covenanted that "the name of the corporation newly formed by said consolidation shall be Federal Tool & Alloy Steel Corporation," and that the "term of existence of such new corporation shall be fifty (50) years." The agreement also provided that the capital stock of "such new corporation" should be exchanged share for share for the outstanding certificates of "said constituent corporations," except that for the outstanding shares of corporation No. 1 (3738.1125 in number) there should be exchanged an ad-

ditional 1.8875 shares of the new corporation (a total of 3,740 shares) in order to avoid the issue of fractional shares. The outstanding shares of corporation No. 2 were 100 in number. The corporation resulting from this agreement subsequently changed its name to Swedish Iron & Steel Corporation, and is the plaintiff in the present action. One of the points in dispute is whether the agreement effected only a merger of the two corporations pursuant to section 15 of the Stock Corporation Law (N. Y. Laws 1909, c. 61 [Consol. Laws, c. 59]), with the result that the plaintiff is the same legal entity as corporation No. 1, as the plaintiff contends, or whether it effected a technical consolidation pursuant to section 7 of the Business Corporations Law (N. Y. Laws 1909, c. 12 [Consol. Laws, c. 4]), and resulted in the creation of a new and different corporate entity, as the defendant contends.

Prior to executing the aforesaid agreement, corporation No. 1 had filed a federal tax return for its fiscal year ending April 30, 1918. Corporation No. 2 had never engaged in business, and so filed no tax return. Subsequent to execution of the said agreement, corporation No. 1 filed another income tax return for the period from May 1 to October 10, 1918, and the plaintiff, in its then name of Federal Tool & Alloy Steel Corporation, filed a return for the period from October 10 to December 31, 1918, and a return for the calendar year 1919. The latter shows a net loss of some $36,000, which, as already stated, forms the basis of the present suit. The tax assessed against corporation No. 1 for its taxable year ending April 30, 1918, amounted to $78,625.06, and was paid in three installments, the first being paid on July 29, 1918, by corporation No. 1, and the last two, on January 6 and May 19, 1919, respectively, by the plaintiff. The last installment was $18,515.82. It is stipulated that, if the plaintiff is entitled to a judgment, the amount thereof should be $14,150.62.

On February 28, 1923, plaintiff filed a claim for refund of the entire tax assessed against corporation No. 1 for the year ending April 30, 1918, on the ground that it was entitled to a special assessment under section 210 of the Revenue Act of 1917 (40 Stat. 307). By letter dated April 22, 1925 (Exhibit B), the Commissioner notified plaintiff of the rejection of its claim for refund. Thereafter, by letters dated July 22 and September 29, 1925 (Exhibit 16), plaintiff asked for a reaudit and reconsideration of the taxes assessed for the year ending April 30, 1918,

and claimed deduction of its net loss for the calendar year 1919. The Commissioner replied on October 26, 1925 (Exhibit 17), that the case would be reconsidered, and by letter of November 27, 1925 (Exhibit 15), notified plaintiff that the taxes as previously determined were correct. Within two years thereafter, and in October, 1927, the present suit was brought.

The contention that the claim for refund presented to the Commissioner is insufficient to support the suit will be first considered. Revised Statutes, § 3226, as amended (43 Stat. 343 [26 USCA § 156]) provides that: "No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected * * * until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof."

Article 1036 of Regulations 62 was in effect when the plaintiff filed its claim for refund on February 28, 1923. That article provides: "Claims by the taxpayer for the refunding of taxes and penalties erroneously or illegally collected shall be made on form 843. * * * All the facts relied upon in support of the claim shall be clearly set forth under oath. * * *"

The plaintiff's claim for refund filed on February 28, 1923, was made on form 843, and was under oath, but it contained no suggestion that the claim was based on the right to deduct the net loss incurred by plaintiff in the calendar year 1919 and no inference to facts in support of such a claim. Hence the claim as originally filed was insufficient to give notice of the cause of action now sued upon. See United States v. Felt & Tarrant Mfg. Co., 283 U. S. 269, 272, 51 S. Ct. 376, 75 L. Ed. 1025; Red Wing Malting Co. v. Willcuts, 15 F.(2d) 626, 634, 49 A. L. R. 459 (C. C. A. 8th Circuit), and numerous authorities cited in Art Metal Const. Co. v. United States, 47 F.(2d) 558, 561 (C. C. A. 2d Circuit).

But the plaintiff contends that the claim for refund was amended to specify the proper ground by the letters of July 22 and September 29, 1925. This was subsequent to the Commissioner's letter of April 22, 1925, notifying the plaintiff of the rejection of its claim for refund. It was also more than six years after payment of the final installment

of the tax on May 19, 1919. Section 1316 of the Revenue Act of 1921 (42 Stat. 314 [26 USCA § 157 and note]) and section 1012 of the Revenue Act of 1924 (43 Stat. 342 [26 USCA § 157 and note]) require a claim for refund to be presented within four years after payment of the tax. Assuming that the letters of July 22 and September 29, 1925, may be treated as an amendment of the claim as originally filed, although they do not profess to be such, but asked for a "reaudit and reconsideration" of the tax for the fiscal year ending April 30, 1918, the question arises whether an amendment setting up a new ground for refund may be received and considered by the Commissioner after the original claim has been rejected and after the statutory period for filing claims has run. That the Commissioner cannot be required to receive an amendment under such circumstances was stated in Solomon v. United States, 57 F.(2d) 150, 151 (C. C. A. 2d Circuit). In McKesson & Robbins, Inc., v. Edwards, 57 F.(2d) 147, 150 (C. C. A. 2d Circuit), it was held that an amendment might be made with the Commissioner's acquiescence after the period of limitation had run. There, however, the original claim contained a reference, though an insufficient one, to the ground of relief set forth in detail in the amendment; there was something to amend. Here the letters treated as an amendment set up an entirely new ground not in any way mentioned in the original claim. Strictly it was not an amendment at all, but the presentation of an entirely new basis for relief. To allow an entirely new ground for relief to be presented after the statutory period has run appears to me no different than to allow the original and only claim for refund to be filed at that time. Clearly the latter is forbidden by the statute. In my opinion, the former is also. See Mutual Life Insurance Co. v. United States (Ct. Cl.) 49 F.(2d) 662, 664; Sugar Land Ry. Co. v. United States (Ct. Cl.) 48 F.(2d) 973; New England Mutual Life Insurance Co. v. United States (Ct. Cl.) 52 F.(2d) 1006; National Fire Insurance Co. v. United States (Ct. Cl.) 52 F.(2d) 1014, 1017; Connell v. Hopkins, 43 F.(2d) 773 (D. C. N. D. Texas); Meinrath Brokerage Co. v. Crooks, 28 F.(2d) 991 (D. C. W. D. Mo.).

The plaintiff contends that the issue above discussed is not properly before the court because the defendant did not plead the statute of limitations. The point is not well taken. In its complaint the plaintiff alleged that on or about February 28, 1923, it filed a

claim for refund; it alleged nothing as to the letters upon which it now relies as constituting an amendment. The defendant's amended answer sets up as a second defense that "in said claim for refund plaintiff did not set forth the cause of action which is now stated in its complaint." When the claim for refund (Exhibit 14) was offered in evidence, the defendant objected to its admission for the same reason. After the trial was concluded, the letters in question (Exhibit 16) were put in by stipulation, "subject to the objections and exceptions of defendant." Where the filing of a claim for refund "according to the provisions of law in that regard" is a condition of the plaintiff's right to maintain its suit, it would seem that the plaintiff would have the burden of alleging and proving timely filing of his claim, and that the defendant would not be required to plead and prove a late filing. In other words, I do not think this is a suit where the ordinary rules of pleading a statute of limitations are applicable. But, if they were, I should allow the defendant, in view of the way the case was presented, to amend its answer to set up the statute. In my opinion, therefore, the defendant's contention that the amendment was too late is properly before me and presents a complete bar to the suit.

■ But, even if this conclusion were wrong, there is another ground upon which the verdict must be directed for the defendant; namely, the lack of identity between the plaintiff and the taxpayer against whom the tax in question was assessed. Under the law of New York, as it existed when the agreement of October 2, 1918, was made, a consolidation of two corporations effects a dissolution of the constituent corporations and the creation of a new corporate entity. People ex rel. New York Phonograph Co. v. Rice, 57 Hun, 486, 11 N. Y. S. 249, affirmed 128 N. Y. 591, 28 N. E. 251; People v. N. Y., C. & S. L. R. Co., 129 N. Y. 474, 29 N. E. 959, 15 L. R. A. 82; Matter of Bergdorf's Will, 149 App. Div. 529, 532, 133 N. Y. S. 1012. It seems perfectly clear that the agreement of October 22 contemplated a consolidation of the two constituents which I have referred to as corporation No. 1 and corporation No. 2. Each of the constituent corporations had a corporate life of unlimited duration. The agreement specifies the name of "the new corporation formed by said consolidation," and provides that its term of existence shall be fifty years. Section 7 of the Business Corporations Law (chapter 12, N. Y. Laws 1909) expressly provided that an agreement for consolidation should prescribe the name of the "new corporation" and "the term of its existence, not exceeding fifty years." The agreement also specified the amount of the capital stock of the new corporation (as required by the statute), and provided for the issuance of the stock of the new corporation in exchange for the certificates of the constituent corporations. The use of the word "merge" in conjunction with "consolidation" is wholly insufficient to overcome this clear evidence of the creation of a new corporation by consolidation. Nor is the agreement consistent with an intent to merge corporation No. 2 into corporation No. 1. The merger statute (section 15, c. 61, N. Y. Laws 1909) provides that the subsidiary corporation may be merged into the possessor corporation, and thereupon the latter shall acquire all the rights, privileges, and property of the former and control them "in its name." The agreement of October 2, 1918, contemplated nothing of this sort; corporation No. 1 was not to acquire and control in its name the rights of corporation No. 2, but a new corporation, of a different name and different term of corporate life, was to take the place of the two constituent corporations. And what was done after the agreement was executed is consistent only with this view. Corporation No. 1 filed a tax return for the period from May 1 to October 10, 1918, and the "new corporation" by its then name of Federal Tool & Alloy Steel Corporation filed its return for the period from October 10 to December 31, 1918, thereby clearly indicating its own understanding that it was a different taxpayer from corporation No. 1. Moreover, in a merger there is no exchange of stock such as took place under the agreement of October 2, 1918. Since the plaintiff is a different corporate entity from corporation No. 1 against which the tax in question was assessed, section 204 (b) of the Revenue Act of 1918 has no application. That section requires that the net loss be incurred by the same taxpayer against whom a tax was assessed for the preceding taxable year.

For the foregoing reasons, I deny the plaintiff's motion for a directed verdict and direct a verdict for the defendant.