## BRODERICK, Superintendent of Banks of New York, v. ANDERSON, Collector of Internal Revenue.

District Court, S. D. New York.
April 1, 1938.

490

William E. Riseley, of New York City (Harry C. Liebman, of Philadelphia, Pa., of counsel), for plaintiff.

Lamar Hardy, U. S. Atty., of New York City (Robert E. Pratt, Asst. U. S. Atty., of New York City, of counsel), for defendant.

**KNIGHT, District Judge.**

This is a suit to obtain a refund of income taxes paid by the Bank of United States on income for the year 1929. The total refund now sought is $31,061.31, with interest from 1930. The Bank of United States in 1929 and for years prior thereto was a banking corporation doing business in the city of New York. On December 11, 1930, it was closed, and the superintendent of banks took possession as the statutory receiver. . The Municipal Bank & Trust Company merged with the Bank of United States on May 11, 1929, and the Colonial Bank merged in the Bank of United States on March 31, 1929.

Four separate causes of action are set forth in the complaint. The second cause of action was abandoned. The remaining causes will be considered separately and in the order in which they are set forth in the complaint.

The first cause of action alleges that the Commissioner of Internal Revenue erroneously disallowed deduction from net income aggregating $152,333.57. The items of this alleged claim are, first, interest accrued on mortgage investments in default, in the sum of $58,419.41; second, loss sustained by defalcation of an employee, in the sum of $19,914.16; and, third, loss on mortgage foreclosures in the sum of $74,000. The claim for deduction on account of interest accrued on these mortgage investments was reduced on the trial to $29,756.88.

The item of $29,756.88 is for interest accrued in the year 1929 on a mortgage given by Metropolitan Lumber Company in the sum of $277,233.87 and on three several mortgages given by I. Snyder, Inc., to the Municipal Bank & Trust Company in 1927 and on certain advances made by the taxpayer.

There were defaults as to principal and interest on the Metropolitan Lumber Company mortgage in 1927. The mortgage was foreclosed in 1929, and the Wagram Holding Company, a wholly owned subsidiary of the taxpayer, in February, 1930, acquired title to the mortgaged properties. To acquire these properties Wagram Holding Company borrowed from the taxpayer $913,997.85 and as security gave the taxpayer a mortgage upon the properties. The bank obtained through the foreclosure proceedings $164,102.07. The bank continued to accrue interest on this loan until it closed its doors in December, 1930. The proper-

ties were appraised February 24, 1931, at $858,750. It is now claimed that the accrual of this interest on the books of the bank and the tax return of interest accrued were improper. The taxpayer had the right to accrue such interest in case there were "reasonable expectation" on the part of the bank at the time of accrual that the right to receive the interest would "be converted into money or its equivalent." H. Liebes & Co. v. Commissioner, 9 Cir., 90 F.2d 932. The proofs satisfy me that these accruals were made with such expectation. The taxpayer continued accruals after its subsidiary took title and until the taxpayer bank closed its doors. The accruals were made continuously from the time of the commencement of the foreclosure in April, 1929. There is nothing to show whether any part of the debt has been paid. The appraisal value in 1931 equaled the investment of the taxpayer. The taxpayer had loaned Wagram $913,-997.85, and was paid $164,102.07 on the original debt. The bank examiner allowed principal and interest, and the merged property was bought in by Wagram at the amount of taxpayer's lien.

██ The Municipal Bank between April 1927, and May 11, 1929, advanced I. Snyder, Inc., $183,000. Between May 11, 1929, and December 31, 1929, the Bank of United States advanced $77,975.51 to Belran Realty Corporation, to whom title to the mortgaged lots was transferred by I. Snyder, Inc. All advances were made for building construction purposes. Belran defaulted in November, 1929, and in February, 1930, the property was sold on foreclosure and bid in for $5,000 by the Merit Mortgage Corporation, holder of a separate mortgage on the same premises. Merit Mortgage Corporation assigned its bid to Monceau Holding Corporation, subsidiary of the taxpayer, to be held for the benefit of Merit Mortgage Corporation and the taxpayer. The bank also accrued the interest in 1930, 1931, 1932, 1933, but did not report it as income. The "expectation" of the taxpayer must be judged by the facts shown in the light of their reasonable probabilities. While the sale price or foreclosure under certain circumstances may be taken as evidence of value, it can be hardly so here when the liens on the property included that of the taxpayer in the amount of $260,-975.51 and the mortgage of the Merit Mortgage Corporation in the sum of $30,000. The purchase at $5,000 was made by one

mortgagee under arrangement between both mortgagees. In 1930, after the mortgage sale, the taxpayer advanced $105,504.-75. This is strong evidence that the taxpayer had reasonable expectation that the interest would be paid. Also, there is nothing in the record to show that the taxpayer sustained any loss, and this is made more doubtful by the combination of the two interests.

Plaintiff relies mainly upon Corn Exchange Bank v. United States, 2 Cir., 37 F.2d 34. The facts there are not comparable. The interest was accrued after receiver had been appointed. There was nothing to show that the bank held any security for its loans, and when the interest was being accrued it appeared beyond question the debtor was insolvent and would be unable to pay. Further, the court there said: "it was improper to accrue * * * on an obligation of the corporation known to be in receiver's control and from whom it was known it could not expect to receive interest. When a tax is lawfully imposed * * * it is upon the basis of a reasonable expectancy of its receipt." The rule to be applied here and as laid down in American Cigar Co. v. Commissioner, 2 Cir., 66 F.2d 425, 426, is: "If the coupons had not been paid, that fact alone would not justify a failure to return their face amount in the gross income, as long as the accrual basis was used." It is, however, unnecessary to determine which of these last two cited cases has application here, for the reason that the court finds that the taxpayer did have "reasonable expectation" that the interest would be paid. H. Liebes & Co. v. Commissioner, supra.

██ On November 20, 1929, the taxpayer discovered the embezzlement of $19,914.-16 by a teller of the bank during October, 1929. Plaintiff was insured against this loss by a solvent insurance company. The insurance policy required prompt notice of default and presentation of a claim thereon within ninety days from the date of discovery of the defalcation (paragraph 4, surety bond). No claim was presented in 1929. A claim presented in 1930 was rejected and never paid.

Some question is raised regarding the time when notice of loss was given. This is of no consequence, since concededly no claim was made within ninety days from the discovery. The question is whether taxpayer suffered a loss in 1929 or in 1930. Section 23(f) of the Revenue Act of 1928,

45 Stat. 799, 26 U.S.C.A. § 23(f), provides: "in the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise" are deductible. No force can be given to plaintiff's claim that "not compensated by insurance" does not mean "not covered by insurance." It means that or it is meaningless. Concededly the insurance company was solvent. Until during January, 1930, the taxpayer had a right to make a claim against the insuring company for the loss. There is nothing to show the claim was not collectible. Under the facts hereinbefore stated, the loss was sustained in 1930. The law applicable is stated in Burnet v. Huff, 288 U.S. 156, 53 S.Ct. 330, 77 L.Ed. 670, as follows (page 331):

"But the mere existence of liability is not enough to establish a deductible loss. * * * And whether a taxpayer will actually sustain a loss through embezzlement of trust funds of which he is trustee will depend upon a variety of circumstances. If there is liability on his part for the misappropriation, it does not create a certainty of loss, as the defalcation may be made good by the one who caused it, or the liability of the taxpayer may be enforced only to a limited extent or not at all. The requirement that losses be deducted in the year in which they are sustained calls for a practical test.. The loss 'must be actual and present.'"

See, also, Allied Furriers Corp. v. Com'r, 24 B.T.A. 457, and numerous cases there cited; United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120; Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010; Eckert v. Burnet, 283 U.S. 140, 51 S.Ct. 373, 75 L.Ed. 911; Gowen v. Comm., 6 Cir., 65 F.2d 923; Commissioner v. John Thatcher & Son, 2 Cir., 76 F.2d 900; Brown v. Commissioner, 6 Cir., 94 F.2d 101.

■ The Municipal Bank & Trust Company held a mortgage given by Schenley Construction Company, Inc., to secure $50,000 and dated July 19, 1927. Foreclosure on this mortgage was commenced in 1928 when there was then due $46,612.65. On August 28, 1929, the property was sold at foreclosure sale to the Rella Development Company, subsidiary of the taxpayer, for $26,000. The Rella Development Company on the same day gave its note to the taxpayer for $55,739.84, the total amount of the mortgage debt, with interest, and the taxpayer then marked the original debt paid on the books.

The claimed loss here is of $20,612.65, the amount being the difference between the debt and the sale price.

The Municipal Bank & Trust Company held a mortgage for $18,000 given by the Wilmin Realty Corporation February 18, 1927. This was foreclosed and the mortgaged premises were sold November 16, 1929, to the Messina Holding Corporation, a wholly owned subsidiary of the taxpayer, for the sum of $7,500. The claimed loss is $10,500.

The taxpayer held a mortgage of $45,000 given by 3515 Surf Avenue, Inc., to the Municipal Bank & Trust Company on April 1, 1927. This mortgage was foreclosed and the property sold on November 8, 1929, to the said Messina Holding Corporation for $5,500. The total debt due the taxpayer was $44,000. The Messina Holding Corporation on November 29, 1929, gave its note for $77,750 to the taxpayer to cover the amount of these two mortgages with interest, etc.

A claim for refund is based on aforesaid mortgage losses. These mortgages were marked paid on the bank's books. The claim is made under article 193 of Regulation 74, but the plaintiff now seeks the allowance of this claim as a deduction of bad debts under section 23(j) of the Revenue Act of 1928, 26 U.S.C.A. § 23(k). It seems to be admitted that the claim is insufficient as one for a deduction on account of mortgage losses. The mortgages were taken up by the subsidiaries. The subsidiaries gave their notes for the amounts of the entire debts. Accepting plaintiff's theory that the claim is sufficient as one for deduction of losses under section 23(j), supra (Wunderle v. McGaughn, D.C., 38 F.2d 258; Warner v. Walsh, D.C., 24 F.2d 449), it is not seen how plaintiff is entitled to these deductions as "bad debts." There is nothing to show the value of these notes given by the subsidiaries. There is nothing to show what was done by the subsidiaries with their mortgages. Upon the theory adopted by the taxpayer, it is not seen how it can now claim that the foreclosure purchase price is evidence of value.

[8, 9] The third cause of action relates to the last quarterly payment of the 1929 tax. The basis is the claim that the Bank of United States was insolvent when it closed its doors December 11, 1930, and the right to refund is granted under the provi-

sions of the Act of March 1, 1879. Title 12, § 570, U.S.C., 12 U.S.C.A. § 570. The last quarterly installment of tax in the amount of $14,304.63 was paid December 19, 1930, and a refund in such amount is asked. The Act of March 1, 1879, authorizes the Commissioner of Internal Revenue to remit a tax paid after a company has become insolvent.

The first inquiry is as to the jurisdiction of the court dependent upon the applicability of the two-year statute of limitation for the filing of claims. Section 322, Revenue Act of 1928, 45 Stat. 861, 26 U.S. C.A. § 322. The statute began to run December 19, 1930, the date of the last payment. In July, 1932, the taxpayer sent the defendant a letter and an affidavit. The contents of the letter are immaterial, except possibly in the statement that it asks that any unpaid taxes which may be assessed of record be abated in accordance with the Act of March 1, 1879. The affidavit alleges facts showing insolvency as of the date thereof and asks the benefit of the Act of March 1, 1789. It is apparent that the affidavit standing alone is insufficient to support a claim for the refund sought herein. Plaintiff does not assert that it is. On March 10, 1933, the taxpayer filed a claim for the refund in question. This refers to the affidavit of July 15, 1932. The taxpayer bases its claim that the refund claim last mentioned was filed in time on the contention that it was a supplemental or amended claim, and that the affidavit fixes the time of filing insofar as the statute is concerned. The claim filed in 1933 does not refer to it as supplemental or amendatory. Article 1254 of Regulation 74 of the Act of 1928 provides that the claim shall be filed on Form 843 and that all facts relied on shall be clearly set forth. The courts have been liberal in construing the effect of an amendment to claims to bring the filing date within the statute of limitations. The rule laid down by the courts, broadly stated, is that the identity of the claims must be substantially the same. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619; United States v. Factors & Finance Co., 288 U.S. 89, 53 S.Ct. 287, 77 L.Ed. 633. The first claim did not set out any specific amount claimed as a refund. It did state the basis of the claim, and this is the same as that for the subsequent claim. The second claim is not nominated an amended or supplemental claim. It contains no reference to the first claim. It is a matter of doubt whether the second claim has the effect of an amended or supplemental claim. While I incline to the opinion that the statute has run against the insurance claim, it is not necessary to decide this question in view of the decision on the right of recovery hereinafter made.

The next question is whether there can be a recovery on the merits. Defendant claims that there is no sufficient proof of insolvency in December, 1930. The burden rests in the taxpayer to establish this. It is stipulated that the bank was insolvent July, 1932. The superintendent of banks took possession of the bank December 11, 1930, and has been in possession continuously since. The certificate of the superintendent of banks under date of July 17, 1932, shows the insolvency as of that time. There is sufficient proof to support the finding that it was. These facts are: (1) The financial condition shown as of July, 1932, the continued closing of the bank, and possession by the superintendent of banks; the opinion of the Court of Appeals of the State of New York, in Varick Spring Corp. v. Bank of United States, 264 N.Y. 297, 190 N.E. 647, finding it insolvent as of December 11, 1930, and, lastly, and of much importance, the refunding and abatement, by the commissioner, of taxes on the Colonial Bank and the Municipal Bank and Trust Company on the ground of insolvency.

Is the plaintiff entitled to recover on the merits on the cause of action? Was the sum claimed as a refund heretofore refunded as a partial allowance of a refund filed May 22, 1931, and made November 23, 1932, in the sum of $19,557.50? Defendant contends that it was. Plaintiff asserts that such refund was made on different grounds from the one now made. Plaintiff paid its reportable tax liability for 1929 in quarterly payments in 1930, as authorized by law. Plaintiff claims that only one-fourth of this refund of $19,557.50 is referrable to the last quarter, and it now allows $4,889.37, or one-fourth of abovementioned amount, in deduction of its claims, making its claim now $9,515.26. Concededly the claim for refund relates only to the last quarterly payment.

In Blair v. U. S. ex rel. Birkenstock, 271 U.S. 348, 46 S.Ct. 506, 70 L.Ed. 983, the Revenue Act of 1924 was construed. There the court stated (page 508): "Read together, these sections [250 and 252, Revenue Act 1918, 40 Stat. 1082, 1085] show that

the mere overpayment of an installment is treated as a payment on account of the tax which is assessed for that year."

Plaintiff claims that this case is not controlling in view of section 56(b) of the Revenue Act of 1928, 26 U.S.C.A. § 56(b). The former act provided that payment be made in four installments and gave the taxpayer the option to pay in a single installment. In the act of 1928 it is provided that the tax be paid on March 15 of the ensuing year, section 56(a), 26 U.S.C.A. § 56(a), and gave the taxpayer the option to pay in quarterly installments, section 56(b). Plaintiff asserts that since it paid in quarterly payments, any refund was a refund of the proportionate overpayment of each installment. No difference in the effect of the two acts is seen, and the above-cited case is controlling. Harr v. United States, D.C., 20 F.Supp. 206. Therefore, when the refund in November, 1932, was paid, the entire installment of $14,304.-63 was included, as well as part of the prior or third installment.

So whether or not the claim was timely and a valid claim makes no difference, since all of the amount of claim has been refunded.

In the fourth cause of action, plaintiff seeks to recover the aforesaid sum of $14,304.63 on a theory different from that stated in the third cause of action. The basis of this claim is that claimant is entitled to a deduction of "bad debts" charged off in the sum of $277,138.68. These debts were debts owing the Municipal Bank & Trust Company. Of this amount, $155,388.-87 became due after the merger with Bank of United States on May 11, 1929. In the latter's income tax return filed for the year 1929, it did not take a deduction for any of these debts. On March 30, 1930, the Municipal Bank & Trust Company filed an income tax return for the period from January 1, 1929, to May 11, 1929, taking a deduction from its reported income of these same "bad debts." The Commissioner disallowed such deductions, and thereafter assessed the Municipal Bank & Trust Company $44,316.64, which included an assessment of approximately $17,000 on account of such debts. The Bank of United States took an appeal. This was never prosecuted, and the appeal was dismissed. Shortly afterwards the Bank of United States filed a claim, asserting that it was entitled to the deduction. While these debts were charged off by Municipal Bank & Trust Company on May 11, 1929, the day of merger, plaintiff claims this was improperly so done; that the merger became effective as of noon on May 11, 1929, and they were directed to be charged off after that hour; that such act was improper; that the Bank of United States owned these debts, and it alone is entitled to such deduction. The taxpayer must prove that he paid value for these debts before he is entitled to any deduction. Article 192 of Regulation 74 of the Revenue Act of 1928. The attempt is made to show this by showing book conditions of the merged banks, the basis on which the stock of Municipal Bank & Trust Company was exchanged for units of stock in Bank of United States and Bankus Corporation and by the listed values of said stock. At the most such method could only approximate the relative values, but this computation leaves out entirely the value of Bankus Corporation.

No financial statement of Bankus has been submitted nor any statement of Bank of United States which has been shown to include Bankus. Even assuming that the Bank of United States' values include Bankus, no foundation is laid for the conclusions sought to be drawn. The merger was consummated and shares transferred on the basis of market values of the stocks of the corporations involved, at best these values are approximate. In the absence of a full appraisal of the assets of the merging corporations, to assume that the market value so nearly reflected actual value as to prove that debts of one corporation in the amount of $155,388.87 were taken into consideration in the plans of the merger is preposterous. The book values not having been used in effecting the merger, they cannot be controlling in the present instance. Furthermore, book values often lag in reflecting actual changes in value due to changing conditions. The mere fact that there is a difference between the market value of shares of Bank of United States issued to Municipal Shareholders as a result of the merger and the book value of Municipal alone cannot constitute proof that such difference included payment for these particular securities.

The Bank of United States attempted to get these charged off as against the Municipal Bank & Trust Company. It failed in this and immediately thereafter seeks a charge off on its own account. So far as appears, the Commissioner did not disallow the claim because the Municipal

Bank & Trust Company did not have legal right to make the claim. The Municipal Bank & Trust Company's income tax return was filed nearly a year after the day when the banks merged. The United States Bank on the day of merger knew what its status was as regards these bad debts. The obvious conclusion is that the present claim is presented to litigate the question already decided. No appeal was taken by the Municipal Bank & Trust Company or the United States Bank from the decision of the Commissioner. Whether this was charged off by the United States Bank makes no difference if the plaintiff is bound by the prior decision. Further, in substantiation of this view, as admitted by plaintiff, the officers of United States Bank directed that these debts be charged off by the Municipal Bank & Trust Company, and it was that charge-off which was the basis of the claim of the Municipal Bank & Trust Company.

The Municipal Bank & Trust Company notified United States Bank that it would close its books at 12 o'clock noon on May 11. As a matter of fact, this was not done, for later in the afternoon Marcus, president of United States Bank, according to plaintiff, ordered this charge-off on the Municipal Bank & Trust Company books. The date theretofore fixed for the merger was May 11, 1929, and no statute requires a specified hour of merger to be fixed, nor is there anything anywhere in the record relative to 12 noon, except notice from the Municipal Bank & Trust Company, and for the convenience of the respective banks the books were not closed till this charge-off was made.

■ Plaintiff claims it was unnecessary to show value paid for these debts, because Bank of United States succeeded to Municipal Bank & Trust Company rights. This would seem to be so under the facts shown in Western Maryland Railroad Co. v. Commissioner, 4 Cir., 33 F.2d 695, cited by plaintiff. But there the taxpayer, claimant, has gone to great length to show that value was paid and here as against the Municipal Bank & Trust Company these debts have been officially disallowed as such in reduction of taxes. Under the latter circumstances plaintiff was obliged to show it paid value for them. Plaintiff cannot blow hot and blow cold as to its position under the facts here.

■ Defendant claims the statute ran as against any claim for deduction except for the last quarter of 1929 and for that quarter a refund was made November, 1932, covering any claims for deduction during that quarter. The answer did not include a plea of the statute of limitations as to this claim, and defendant on the trial moved to amend to include such plea. Since it was raised on the trial, I conclude the amendment should be allowed. The statute has run except as to such last quarter and for that period the prior refund by defendant covers any claim in that period for a deduction.

■ Defendant paid plaintiff $2,645.06 and $2,800 in July, 1933, refunding taxes paid by plaintiff on account of the Municipal Bank & Trust Company and Colonial Bank for 1929, and the same month abated tax liability of Colonial Bank and Municipal Bank & Trust Company in the sum of $44,856.59. Unless there are circumstances which differentiate, if an overpayment of taxes does not exist, no refund can be made. Lewis et al., Trustees v. Reynolds, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293; Oswego Falls Corp. v. Commission, 26 B. T.A. 60; Com'r v. Oswego Falls Corp., 2 Cir., 71 F.2d 673. This view is not in conflict with section 322(a) of the Revenue Act of 1928, 26 U.S.C.A. § 322(a). So plaintiff can have no refund unless it has over paid its taxes for 1929. Harr v. United States, D.C., 20 F.Supp. 206; Blair v. U. S. ex rel. Birkenstock, 271 U.S. 348, 46 S.Ct. 506, 70 L.Ed. 983. The first mentioned refunds were made to this plaintiff. The taxes assessed were paid by plaintiff. These refunds were in cash. As heretofore stated, on February 13, 1932, the Commissioner assessed a deficiency of taxes against the Municipal Bank & Trust Company in the sum of $44,315.64, plus $5,085.98 interest, for 1929. From this assessment plaintiff appealed to the Board of Tax Appeals. The following July plaintiff filed the affidavit aforesaid and claimed the benefits of the act of 1879. The plaintiff therein styled itself Bank of United States, successor to Municipal Bank & Trust Company. In June, 1933, the Commissioner abated the tax deficiency for $44,315.64 plus interest, and also scheduled for refund the $2,800 aforesaid on account of the Municipal Bank & Trust Company and abated $539.95, tax refund on account of Colonial Bank. In all the transaction relative to these tax refunds and the abatements, the correspondence was with the United States Bank and all notices were directed to United States Bank. If United States Bank

496

had not been insolvent, it would have had to pay these taxes. The refunds and abatements were made by the Commissioner on the theory of the insolvency of plaintiff. Plaintiff claims that unless the United States Bank had these assessments laid against it as "transferee" it is not liable. The affidavit aforesaid, claimed to constitute a claim, speaks of the United States Bank as successor. Section 311(a) of the Revenue Act of 1928, 26 U.S.C.A. § 311(a), provides that an assessment against a transferee shall be made within one year after the expiration of the period of limitation for assessment against the taxpayer. If plaintiff comes within that section, the period of limitation expired March 15, 1933. No assessment was made against plaintiff "as transferee." Under section 494, subd. 2, of the Banking Law of New York, Consol.Laws, c. 2, the obligations of the Municipal Bank & Trust Company and Colonial Bank were required to be. assumed by the merging bank, the same as tho the latter had incurred the liability. So no assessment against United States Bank was necessary. Lewis v. Reynolds, supra. Viewed from this standpoint, the United States Bank owed defendant $44,856.59. This exceeds by $30,551.96 the amount claimed in this cause of action, and by $13,798.27 the entire amount claimed by plaintiff in this action. Article 1231 of Regulation 74 does define as a "transferee," among others, "the successor corporation," but this has no application under the facts here, since no "transferee" assessment was necessary. Michael v. Commissioner, 2 Cir., 75 F.2d 966, 969, cited by plaintiff, is authority only for the contention that there is a distinction in section 280(a) (1), 26 U.S.C.A. § 1069(a), now 26 U.S.C.A. § 311, "between a taxpayer and one liable at law or in equity to pay his tax." But as stated no transferee assessment was made here. This statement also appears in the opinion: "The act * * * defines a 'taxpayer' as one 'subject to a tax imposed by this Act.' The act imposes no tax upon the transferee of assets of a taxpayer. It creates no new liability. It merely provides a new method by which the liability which arises at law or in equity may be determined and enforced."

Conclusions of Law.

1. That the evidence establishes that at the times when the Bank of United States accrued upon its books the interest upon the mortgages of the Metropolitan Lumber Company and the Monceau Holding Corporation, the officers of such bank had "reasonable expectancy" that such charges would be converted into money, and, under such circumstances having kept its books upon an accrual basis, the plaintiff is not entitled to recover any refund on account of its payment of a tax upon such interest.

2. That the plaintiff is not entitled to any refund on account of taxes paid on losses in the sum of $19,914.16 arising out of the defalcation of a teller of the Bank of United States in 1929, for the reason that any deductible loss on account thereof occurred in the year 1930 when the Bank of United States failed to proceed to collect upon the bond given by such teller to insure the Bank of United States against any losses by reason of his defalcation.

3. That the plaintiff is not entitled to recover any refund on account of the loss sustained on account of these mortgages, to wit: Schenley Construction Company mortgage, $20,612.65; Wilmin Realty Corporation mortgage, $10,500.00; 3515 Surf Avenue, Inc., mortgage, $39,500; making a total of $70,612.65, for these reasons: (a) Plaintiff has failed to prove that it has sustained any loss upon such mortgages or show the value of the notes given the Bank of United States by Rella Development Corporation or Messina Holding Corporation; (b) that no "charge off" on the taxpayer's books in the year in which the loss is claimed was made; (c) that the claim was not filed within the period fixed by the statute of limitations; (d) that the installment of taxes in the amount of $14,304.63 paid by Bank of United States on December 19, 1930, was included in the sum of $19,557.50 refunded by the Commissioner to the Bank of United States in November, 1932.

4. That the Bank of United States was insolvent on December 11, 1930.

5. That the sum of $19,557.50 refunded by the Commissioner in November, 1932, is to be applied in extinguishment of taxes paid for the last quarter of 1930 and for which the Bank of United States is entitled to a refund and any excess over and above amount to which the Bank of United States was entitled to a refund for the last quarter is to be applied upon the refund to which the bank was entitled for the third quarter.

6. That plaintiff is not entitled to recover any refund for worthless loans in the

sum of $155,388.87 claimed as deductions from gross income of Municipal Bank & Trust Company for the year 1929 for the reason that the tax assessed against the Municipal Bank & Trust Company on account of such loans was abated to the Municipal Bank & Trust Company.

7. That the plaintiff is estopped from recovery of taxes assessed on the worthless debts in the amount of $155,388.87 by reason of the fact that plaintiff appealed from the order of the Commissioner disallowing such losses as deductions and thereafter the final order was made by the Board of Tax Appeals dismissing such appeal, and no appeal was taken from such order and no application made for reinstatement of the case.

8. That there is no sufficient proof that the Bank of United States paid value for the aforesaid worthless notes in the amount of $155,388.87 or any part thereof.

9. That the right, if any, to charge off the aforesaid debts in the amount of $155,388.87 or any part thereof was in the Municipal Bank & Trust Company and not the Bank of United States.

10. That the defendant has refunded and abated taxes for the benefit of the plaintiff for the year 1929 in a sum greater than the plaintiff in any event would be entitled to as a refund on account of all the claims sued on herein.

11. That the plaintiff is not entitled to recover on any one of the alleged causes of action numbered 1, 3, and 4.

12. That the complaint be dismissed with costs.