## McKESSON & ROBBINS, Inc., v. EDWARDS.
### No. 17.

Circuit Court of Appeals, Second Circuit.

April 4, 1932.

Donald Horne, of New York City, for appellant.

George Z. Medalie, U. S. Atty., of New York City (Leon E. Spencer, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff filed its amended complaint against the collector of internal revenue to recover taxes wrongfully assessed and paid by it. This the defendant moved under the New York Code, to dismiss, supporting his motion by affidavits; the court granted the motion, and later refused to allow the plaintiff to file a second amended complaint, because the new allegations would not change the result. We are to consider the allegations of the proposed amended complaint, together with the uncontested facts in the affidavits. The situation so disclosed is as follows: The plaintiff had a claim for deduction from its income for the year 1918, due to the amortization of "war facilities" under section 234 (a) (8) of the Revenue Act of 1918 (40 Stat. 1078), which it failed to include in its return for that year. "On or before June 15, 1924," it filed a waiver extending the Commissioner's time within which to assess its taxes for 1918, and this, under section 281 (e) of the Revenue Act of 1924 (43 Stat. 301 [26 USCA § 1065 note]), gave it a correlative right until April 1, 1925, to file a claim for the refund of any overpayment. On February 1, 1925, it did file such a claim in the sum of $100,000. As this was therefore in season under the act of 1924, the plaintiff would have been entitled to press the claim, except for section 1209 of the Revenue Act of 1926 (26 USCA § 1072), which the Commissioner held to require the filing before June 15, 1924. The first question is, whether he was right in so ruling.

Section 234 (a) (8) of Revenue Act 1918 allowed amortization deductions, but did not expressly declare that they must be claimed in the return. The second sentence provided that at any time within three years after the expiration of the war—which turned out to be March 3, 1921—the Commissioner might reconsider such a deduction, if claimed in the return, and assess any addition, and that at the taxpayer's request he must do so, and allow any credit or refund which appeared. Literally, this limitation was not applicable when the taxpayer had claimed no deduction at all in his return, and if so, there was no limitation to his right, except as it might be found elsewhere in the act. However, it is not necessary to a disposal of this case to go so far; we may assume arguendo that a taxpayer who had made no claim in his return was limited like one who had. In that event,

unless the phrase in the complaint, "on or before June 15, 1924," means before March 4, 1924, which is scarcely possible, the plaintiff was already barred at the time it got its extension to April 1, 1925. We will so assume, for it makes no difference.

The same section (section 234 (a) (8), of the Revenue Act of 1921 (42 Stat. 255) was somewhat different; it specifically required that the claim must be made in the returns of 1918, 1919, 1920 or 1921. This however only affected deductions used in computing taxes levied under the act of 1921 itself, and could not apply to taxes for 1918. The Board of Tax Appeals in Appeal of Stauffer Chemical Co., 2 B. T. A. 841, held the contrary, but we cannot agree. That decision was before Congress when the Revenue Act of 1926 was passed, and was the occasion for section 1209, which provided that "notwithstanding" the Revenue Act of 1921, deductions for the years 1918, 1919 and 1920 might be taken in computing taxes levied under the Revenue Act of 1918, if claim was made before June 15, 1924. The Commissioner held that this imposed an absolute limitation, and rejected the claim for that reason. The plaintiff answers that the section was intended only to meet the decision of the Board, and since that is wrong, the section is brutum fulmen. Thus the general limitation applies (section 281 (e) of the Revenue Act 1924) and its claim, filed on February 1, 1925, was in season.

For a disposal of the case at bar it does not seem to us necessary to accept the plaintiff's interpretation broadly. Section 281 (e) of the Revenue Act 1924 gave the taxpayer a quid pro quo for any extension which his waiver effected; he was to have until April 1, 1925, to file his claim for refund. The plaintiff acted upon this, for it gave the waiver after the statute went into effect, June 2, 1924, and, having secured the right, exercised it on February 1, 1925. We may for argument assume that except in cases where under section 281 (e) of Revenue Act 1924, or similar sections, vested rights have accrued, its time to file was limited to June 15, 1924, just as perhaps the Revenue Act of 1918 itself limited it to March third of that year, as we have suggested. But section 281 (e) of Revenue Act 1924, which was repeated in the Revenue Act of 1926 itself, provided for a particular situation, one where the taxpayer had given an extension for assessment and by that means had got an extension for refund. There is an especial reason for supposing that section 1209 was not meant to

override this section, for otherwise we should be forced to assume that Congress intended retroactively to cut short a period on the whole of which the taxpayer might have relied, and in this case had; and this would raise substantial doubts as to its constitutionality, of quite another kind from those considered in Graham v. Goodcell, 282 U. S. 409, 51 S. Ct. 186, 75 L. Ed. 415, for we are here to assume that the tax was in fact never due at all. Moreover, as the debates show, section 1209, Revenue Act 1926, was passed not primarily in limitation, but in relief, of taxpayers; against the possibility that they might have been cut off by failing to claim the deductions in their returns. It is extremely unlikely that it was intended to deprive them of rights already acquired. Therefore, while we need not commit ourselves to the plaintiff's position that section 1209 was not in limitation of such claims at all, we do hold that it did not retroactively deprive taxpayers of any period which section 281 (e) of the Revenue Act 1924 had already given.

The second question also arises over a statute of limitations, that which governs the commencement of the action at bar (Rev. St. § 3226 [26 USCA § 156]). The writ issued March 24, 1928, less than two years after a letter of the Commissioner of March 27, 1926, rejecting the plaintiff's claim. If this were all, there could be no doubt, but the defendant relies upon an earlier rejection in a letter of the Commissioner of December 12, 1925, formally appearing in the schedule of rejections, filed December 23, 1925. The question is whether the period began with the first or second rejection. United States v. Michel, 282 U. S. 656, 51 S. Ct. 284, 75 L. Ed. 598, decided that the last sentence of R. S. § 3226, was not a condition upon the validity of the rejection, which depended upon the final action of the Commissioner, whether communicated or not. Here the action in December was in form final, and unless qualified by what followed, the case ends; but we think the other facts require a different conclusion. The claim, so far as here pertinent, contained only the phrase, "amortization of war facilities," and later the plaintiff filed a brief which, while it is not before us, is alleged to have set forth its grounds in detail. The time at which this was filed is in dispute, and disputes we cannot decide upon such a record. The plaintiff says that it was on December 1, 1925, the defendant on January 14, 1926; but it makes no difference in the result which party is right. If the second, the plaintiff sent it and the Commissioner received it, after the first rejection had been received. He could have regarded it in no other way than as an application for reconsideration of his action, and although he was not bound to receive it at all—for it did not conform with the regulations—he was free to do so if he chose; as he certainly did, since his second rejection dealt specifically with it. If on the other hand he had it already before him, it is at least consistent with the facts, and indeed an almost inevitable inference, that he had not acted upon it at first, and when he discovered it, reconsidered his ruling in the light of what it contained. In either event de facto he did reconsider the claim, and wrote the letter of March 27, 1926, declaring that he would reject the claim and that the rejection would appear in the next schedule. Apparently it did not; at least the defendant's affidavits say so. If not, the only result, so far as we can see, was to throw in doubt whether there was a final rejection at all. At least we do not think that his failure affects the actuality of his reconsideration, of which the letter of March 27, 1926, is irrefragable proof.

So far as we can find, he was free to reconsider, and his decision was in abeyance until he had finished his deliberation. This in substance is the effect of Mobile Drug Co. v. U. S. (D. C.) 39 F.(2d) 940, and Southwestern Oil & Gas Co. v. U. S. (D. C.) 29 F. (2d) 404, and the analogy of the period for appeal is apposite. United States v. Ellicott, 223 U. S. 524, 538, 539, 32 S. Ct. 334, 56 L. Ed. 535. It is, moreover, the only construction which avoids an exceedingly harsh result. The plaintiff had every ground for supposing that its claim, which was in fact under consideration at least until March 27, 1926, had not been finally rejected before, and apparently it acted upon that understanding, for it took out its writ just within two years thereafter. While all taxpayers are charged with notice of the Commissioner's action (United States v. Michel, 282 U. S. 656, 51 S. Ct. 284, 75 L. Ed. 598), they are entitled to look to all he does, else they will be misled and trapped. Section 3226, Rev. St., like any other document, is to be read as sensible people would understand it; it seems to us that in the circumstances here, nobody acquainted with all the facts could have hesitated to believe that the claim had been sub judice till March 27, 1926. We hold that the limitation did not begin to run before that day; we need not say whether it ran from the date of the second schedule, if there was any. We must,

and do, say that the first rejection did not retroactively determine the result of the reconsideration, so as to date it from December 23, 1925.

A final question is as to the sufficiency of the claim which stated no more as a ground for the refund than the phrase, "amortization of war facilities." This did not satisfy the regulations, and the claim could have been rejected for that reason without consideration of the merits. Yet it was more than a mere caveat, an effort to hold open the time for a claim in the future, like those considered in United States v. Felt & Tarrant, 283 U. S. 269, 51 S. Ct. 376, 75 L. Ed. 1025; Art Metal Construction Co. v. U. S., 47 F.(2d) 558 (C. C. A. 2), and United States ex rel. Endicott v. Mellon, 59 App. D. C. 255, 39 F.(2d) 505; it did state a ground, though defectively. It seems to us that in such a case the taxpayer may amend even though the amendment is filed after the period for filing has expired. We have indeed found no case to that effect except Lehigh & Wilkes Barre Coal Co. v. U. S. (D. C.) 38 F.(2d) 637; and it appears to be settled that after rejection, amendments are too late. Sugar Land Ry. Co. v. U. S., 48 F.(2d) 973 (Ct. Cl.); Mutual Life, etc., Co. v. U. S., 49 F.(2d) 662 (Ct. Cl.); Wausau, etc., Co. v. U. S., 49 F.(2d) 665 (Ct. Cl.); Connell v. Hopkins (D. C.) 43 F.(2d) 773. But the distinction between what will bear amendment and what will not, is common throughout the law; it is no doubt one of degree, like most else, but there seems no reason not to apply it here.

Hence if the brief was filed on December 1, 1925, and was enough in substance, the claim was amended; it was good. This would not have been true, if it was filed on January 14, 1926, except for its acceptance by the Commissioner. The same reasoning applies here as to the point just preceding. He might have declined to take it at all and the case would have been at an end, like Solomon v. U. S., 57 F.(2d) 150, which we decide herewith; he is not obliged to reconsider claims once rejected: But he received it and acted upon it, and he must be supposed to have done so in the exercise of a discretion with which he was vested. Having done so, it became an amendment, and must be taken as such in any action which reviews his conclusion. Hence we hold that the claim was sufficient, whenever the brief was filed.

The amended complaint was sufficient as a pleading. We have not distinguished between the affidavits used upon the motion to dismiss it and those used upon the motion for leave to file the proposed amended complaint; we dispose of the case on the assumption that all the facts are before us. However the proposed amended complaint did not improve the amended complaint as a pleading; rather it marred it, for the eighth article alleged a rejection on December 23, 1925, and did not like the first say that the rejection had been after March 27, 1926. Moreover, it incorporated as the ninth article matters which might be thought to set up a new cause of action, though the point has not been argued. Therefore we hold that the proposed amended complaint was rightly refused, but that the amended complaint was good and that the facts stated in the affidavits do not require its summary dismissal. This is all we decide.

Judgment reversed; defendant to plead over.