**PIERCE–ARROW MOTOR CAR CO. v. UNITED STATES.**

No. L–487.

Court of Claims.

Jan. 14, 1935.

Covington, Burling, Rublee, Acheson & Short, of Washington, D. C., for plaintiff.

George H. Foster, of Washington, D. C. (William W. Scott, R. C. Williamson, and Herbert E. Carnes, all of Washington, D. C., on the briefs), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

The plaintiff, a New York corporation, manufactures for sale automobiles, trucks, and service parts therefor. On May 13,

1920, it filed its final income tax return for the calendar year 1919. The books of the corporation were kept upon an accrual basis, and to ascertain taxable income inventories were essential. This suit is for recovery of an alleged overpayment of income taxes for 1919 due to a refusal of the Commissioner of Internal Revenue to permit the plaintiff to include in its inventory for 1919 certain tool steel at its market value.

■ The defendant relies upon two defenses, one going to the merits of the case, and as to the other pleads the statute of limitations. If the latter defense is available, no reason exists to discuss the former. However, a decision as to the limitation act exacts a statement of the facts applicable to both defenses, and for this reason we state them somewhat out of order.

In plaintiff's process of manufacture, tools, dies, and other implements are employed. Plaintiff itself manufactures and repairs the same, and the commodity used to do so is what is known to the trade as tool steel. During the war period plaintiff, impressed with a possible shortage of tool steel, purchased a larger quantity of the same than would have been the case in normal times, and had on hand on December 31, 1919, 247,093 pounds for which it had paid $305,235.88. There were two qualities of tool steel, known as "high speed" and "carbon." For the former the average market price paid was $2.019 per pound, and for the latter somewhat less than $1.00 per pound.

In detail, as a matter of accounting, plaintiff in closing its books on December 31, 1919, fixed a market value of $1 per pound for high-speed tool steel for 137,583⅝ pounds which had cost $2.019 per pound, and the difference in value between cost and market, taking into account certain minor adjustments amounting to $126,141.88, was charged to surplus which had been created prior to 1919, and the high-speed tool steel inventory was credited with the same sum. No change was made on account of the inventory of carbon and high-speed tool steel which had cost less than $1 per pound.

On May 13, 1920, plaintiff filed its income and profits tax return for the year 1919. In disclosing its tax liability of $588,-188.17 it followed its adopted method of accounting, inventorying all items of merchandise on hand at cost or market, whichever was lower, except as to 137,583⅝ pounds of high-speed tool steel which it valued at cost, thereby making no reduction of income on account of the fact that market value as to this steel was lower than cost.

On March 30, 1927, following a duly executed waiver, the plaintiff filed a claim for refund of stated amounts, among which was a claim that "a deduction of $126,141.88 arising from the adjustment of tool-steel inventory to the basis of cost or market at December 31, 1919, should be allowed." As to this item the refund claim was denied May 18, 1928.

On July 17, 1928, plaintiff filed with the Assistant Secretary of the Treasury a memorandum in which among other contentions advanced was one that its closing inventory for 1919 should be reduced to include its high-speed tool steel at market instead of cost value. The Assistant Secretary referred the matter to the General Counsel of the Bureau of Internal Revenue, and on October 10, 1928, a conference took place resulting in an opinion from the General Counsel, transmitted to the Commissioner, that plaintiff's refund claim as to a depreciation allowance upon tools and patterns should be allowed, and on November 23, 1928, the Commissioner allowed said item in a second certificate of overassessment.

The plaintiff again requested the Commissioner to reopen and reconsider its tool steel refund item, and on April 1, 1930, the communication set forth in finding 17 was addressed to plaintiff, and this suit was filed November 22, 1930.

The defendant insists that the refund claim involving the item of tool steel was rejected by the Commissioner on May 18, 1928, and obviously, if this is the fact, under section 1113 (a) of the 1926 Revenue Act (26 USCA § 156), the statute of limitations interposes to defeat the claim. The refund claim of March 30, 1927, was not rejected as to all items. An overassessment was determined as to some, and a refund allowed. The plaintiff, however, was not satisfied with the action taken and appealed as heretofore noted to the Assistant Secretary of the Treasury, with the result that the Commissioner did reopen the prior adjustment and a second refund was allowed by the Commissioner. Obviously during this period of time the refund claim was pending in the Bureau.

The plaintiff's third request, which brought the response of April 1, 1930, was centered exclusively upon the tool steel inventory item. It is difficult to read the rul-

ing of the Commissioner and arrive at any other conclusion than one indicating clearly that the Commissioner did in fact consider this request. The reasons assigned for denying the adjustment claimed, aside from the Commissioner's prior determination, in detail state the grounds for refusing the allowance, cite an adjudicated case to sustain his conclusion, and we think this document discloses the final proceedings. Plaintiff had filed a waiver and the Bureau had the matter before it with a manifest intent to review the issues as raised by the refund claim. We think the facts bring the case on this issue within the case of Jones v. United States, 5 F. Supp. 146, decided by this court December 4, 1933, certiorari denied, 55 S. Ct. 76, 79 L. Ed. ——, as well as the following cases: Bourne v. United States (Ct. Cl.) 2 F. Supp. 228; Ervine & Co. v. United States (Ct. Cl.) 3 F. Supp. 334, and that the suit was brought in time.

█ Section 203 of the Revenue Act of 1918, 40 Stat. c. 18, p. 1060, provides as to inventories as follows: "That whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income."

The Commissioner has promulgated the following regulations with respect to inventories:

"Art. 1581. *Need of inventories.*—In order to reflect the net income correctly, inventories at the beginning and end of each year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. The inventory should include raw materials and supplies on hand that have been acquired for sale, consumption, or use in productive processes, together with all finished or partly finished goods. Only merchandise title to which is vested in the taxpayer should be included in the inventory. Accordingly the seller should include in his inventory goods under contract for sale but not yet segregated and applied to the contract and goods out upon consignment, but should exclude from inventory goods sold, title to which has passed to the purchaser. A purchaser should include in inventory merchandise purchased, title to which has passed to him, although such merchandise is in transit or for other reasons has not been reduced to physical possession, but should not include goods ordered for future delivery transfer of title to which has not yet been effected.

"Art. 1582. *Valuation of Inventories.*— Inventories must be valued at (a) cost or (b) cost or market, as defined in article 1584 as amended, whichever is lower. * * * Whichever basis is adopted must be applied consistently to the entire inventory. * * *"

The defendant concedes that inventories were necessary in order to clearly determine plaintiff's taxable income, and that, exclusive of tool steel, the plaintiff's inventories conformed to the best accounting practice in the trade. This then leaves the single question as to whether the tool steel should have been inventoried or whether the same was a capital asset subject to depreciation allowance.

Oral expert testimony has been adduced as to the best accounting practice in the trade. It is acutely contradictory, difficult to reconcile. Witnesses eminently qualified to testify approve and state the right to inventory the steel upon precisely the same valuation basis as merchandise on hand for sale. Others equally well qualified classify the steel as a capital asset, i. e., a manufacturing supply or a deferred charge to future operations and not a part of plaintiff's inventory of raw materials, goods in process, or finished goods on hand.

Whatever may be the room for disputation as to the correct accounting practice, we believe under the record that the Revenue Act which authorized the regulations of the Commissioner excludes the tool steel as an inventory item. The tool steel was not acquired for sale. It did not become a part of the finished product, and was not a supply on hand for sale. It was used in a productive process and obviously must be accounted for. Nevertheless as an inventory item essential to ascertain net income for taxable purposes it should not be included.

Plaintiff's closing inventory which reflected the value of its merchandise on hand for sale, from which it expected to realize profit, and which it had the right to value at cost or market, whichever was lower, was an important factor in ascertaining its taxable income for the year. If permitted, however, to include therein a commodity whose

585

only relationship thereto was cost of production, an essential investment in a commodity utilized to make the merchandise to be sold, would result, it seems to us, in reposing in the taxpayer an option to either treat the same as a capital asset and receive the benefit of depreciation allowance, or inventory it on the basis of merchandise on hand, whichever seemed more advantageous.

The Commissioner when confronted with a proposition such as this case reflects, a situation incapable of definite determination from the conflicting evidence presented, has no recourse except to resort to the regulations and available precedents exemplifying the correct principle of accounting. This the Commissioner did, and we think he was right. Burroughs Adding Machine Co. v. Com'r, 9 B. T. A. 938; Spiegel, May, Stern Co. v. United States, 37 F.(2d) 988, 69 Ct. Cl. 110; Riverside Mfg. Co. v. United States, 67 Ct. Cl. 117; Id., 279 U. S. 863, 49 S. Ct. 479, 73 L. Ed. 1002.

In November, 1919, plaintiff offered for sale, as a lot, 50 tons of high-speed tool steel at $1 per pound, but failed to procure a purchaser. It supplemented the above offer by an offer to exchange tool steel for other merchandise, and in this respect failed to procure a trade. It contends herein that at least the quantity of tool steel offered for sale or exchange should be reduced from cost to market value as an inventory item. The fundamental proposition upon which the argument is predicated is that "plaintiff held these articles for sale—they were its merchandise." It is true that during this period the commodity was offered for sale or exchange. This fact we think does not change the character of the asset. The plaintiff did not manufacture tool steel. It was not an article of merchandise within the category of its established business, nor one which it maintained on hand to sell for profit in its annual business relationship with the public. It was a sporadic and unusual undertaking in an attempt to minimize as far as possible a loss already ascertained. The case of Heiner v. Tindle, 276 U. S. 582, 48 S. Ct. 326, 72 L. Ed. 714, is not, we think, apposite. The plaintiff did not convert its automobile business into the tool-steel business. The tool steel was not acquired for sale, and the reason for its disposition is apparent.

The petition will be dismissed. It is so ordered.