Williams, Judge,
delivered the opinion of the court:
The plaintiff in this case seeks to recover $6,471.22 excess-profits taxes, including penalty and interest, assessed against it for the year 1917. The basis of the claim is that the Commissioner of Internal Revenue in computing the plaintiff’s invested capital erroneously excluded therefrom the cost to the partnership of the undivided interest in certain real estate which had prior to that year been purchased by the plaintiff and paid for out of accumulated surplus profits of the partnership.
The case was tried by the court on May 8, 1933, on which date special findings of fact were made, and conclusion of law and judgment in favor of the plaintiff for the amount claimed was entered. J. E. Ervine & Company v. United States, 3 F. Supp. 334. On December 4, 1933, the court, upon the motion of the defendant, set aside the judgment and remanded the case for the introduction of additional evidence directed to the establishment of the true facts as to the date of final disallowance of the refund claim filed on May 31, 1923. In the court’s opinion of May 8, 1933, it was held that the Commissioner finally rejected the claim for refund on June 2, 1927, and that the petition having been filed on May 29, 1929, plaintiff’s action was timely brought. This holding was based upon the showing that subsequent to the disallowance of the refund claim and within the period in which the plaintiff could have brought suit upon the same, the Commissioner, in response to the plaintiff’s application, reopened the case and reconsidered the claim for refund upon its merits and gave his final decision thereon on June 2, 1927.
*540 Additional evidence adduced upon the rehearing establishes the fact (finding IX) that the Commissioner, upon application of the plaintiff made on April 22, 1924, reopened the case and reconsidered the refund claim upon the merits, and after such reconsideration notified plaintiff, on October 13, 1924, that his former decision rejecting the claim was adhered to. This fact is not important and has no material bearing on the question in view of the fact that the Commisioner subsequent to this action again reopened the case and reconsidered the refund claim upon the merits within the time in which he had lawful authority to do so. Pierce-Arrow Motor Gar Co. v. United States, 80 C. Cls. 488, 9 F. Supp. 577.
Since the additional evidence in no essential way changes the facts upon which the original opinion of the court was based, .it affords no grounds for changing the decision that the final action of the Commissioner in rejecting the claim for refund was on June 2, 1927. Moreover, the views expressed at that time have since been reannounced by this court in Jones, et al. v. United States, 78 C. Cls. 549, 5 F. Supp. 146; American Safety Razor Corporation v. United States, 79 C. Cls. 141, 6 F. Supp. 293, in both of which cases certiorari has been denied.
The merits of the claim for refund, the right of plaintiff to have included in invested capital the actual cost to the partnership of the undivided interest of the real estate in question, are fully discussed in the original opinion, to which reference is here made.[1] It is sufficient, we think, to say that after careful consideration of the defendant’s brief and the oral argument of counsel, we adhere to the conclusions there reached. The plaintiff is therefore entitled to recover and will be awarded judgment in the sum of $6,026.99, together with interest thereon as provided by law.
It is so ordered.
Whaley, Judge; LittletoN, Judge; Gkeen, Judge; and Booth, Chief Justice, concur.
*541 ORIGINAL OPINION OF THE COURT
Williams, Judge,
delivered, the opinion of the court:
Two issues are presented in this case, (1) Whether the net cost to plaintiff of the eleven-sixteenths’ interest in the real estate in question should have been included in plaintiff’s invested capital for the year 1917, and, if so, (2) whether the plaintiff’s suit was barred by the statute of limitations on the date of the filing of its petition, May 29, 1929.
The definition of “ invested capital ” applicable to the year 1917 is found in section 207 of the Revenue Act of 1917 (40 Stat. 300, 306) :
“(a) In the case of a corporation or partnership: (1) Actual cash paid in, (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation or partnership, * * * and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year: * *
The facts show that J. E. Ervine and J. E. Bishop organized a partnership in 1904, under the firm name of J. E. Ervine & Company. From that time until and during the year 1917 the partnership' dealt in grain, real estate, oil leases, and royalties, sharing equally in the profits of the business. During the existence of the partnership neither partner had any business dealings outside the partnership. The only property owned by Mr. Ervine, outside the partnership property, was his home and some property inherited from his mother, and the only property owned by Mr. Bishop, other than his interest in the partnership, was his home. They frequently borrowed money for the account of the partnership, issued partnership notes, secured partnership loans by pledging partnership assets, including their' interest in the real estáte involved. The income from the real' estate went into the partnership income and was so' returned on their income tax returns. Statements furnished to the banks for the purpose of securing partnership credit listed their eleven-sixteenths’ interest in the real estate.
*542 The Commissioner of Internal Revenue in rejecting the claim for refund said:
“ * * *. The claim is based on the statement that the examining officer eliminated from invested capital $98,309.07, which represents $ of the value of land owned by J. Ei Ervine and J. E. Bishop, individual members of the partnership of J. E. Ervine & Company together with Mrs. J. E. Scott and W. H. Bishop.
u Inasmuch as the property is not exclusively owned by J. E. Ervine & Company, it does not constitute invested capital of the partnership, and income and expenses in connection with the property should not be considered in the computation of the partnership’s income. * * * ”
The record leaves no room for doubt that the partnership owned an eleven-sixteenths’ interest in the real estate, and that its net cost to the partnership was $98,309.07. This interest was purchased with partnership funds. Its acquisition was a partnership transaction and the interest was employed exclusively in the partnership business. It was, as we have seen, pledged for partnership loans, listed as a partnership asset in statements furnished to banks for credit purposes, and was liable at all times for the partnership debts. That title to the eleven-sixteenths’ interest was held in the individual names of the partners in unequal proportions is immaterial in view of the fact that the whole of the interest was regarded by them and treated by them as an asset of the partnership. When the eleven-sixteenths’ interest in the Nolan tract was originally acquired in 1909 the deeds were made to Mr. Ervine, later part of the tract was sold, and the purchaser having defaulted, title to the same was recovered through court proceedings in 1916 when the deed was made to the individual partners. Both the original purchase in 1909, and the reacquirement in 1916, were reflected on the books of the partnership in accordance with the proportion of the then invested capital of the respective partners in the business, and were paid out of partnership funds. The proof is uncontradicted that the eleven-sixteenths’ interest of the partnership in the real estate had been purchased out of the earned surplus and undivided profits of the partnership. It clearly constituted a part of plaintiff’s invested capital and should have been included *543 as such in the computation of its tax liability for the year 1917. The contention that because the property Was not owned exclusively by the partnership, the value of its undivided interest therein does not constitute invested capital, is not supported by any authority and we think is without merit.
The claim for refund was first disallowed by the Commissioner of Internal Revenue on January 17, 1924. The two-year limitation provided in section 3226 of the Revised Statutes (26 U. S. C. A. sec. 156) for instituting suit on this action expired on January 17, 1926. The petition was filed on May 29,1929,. and if the statute of limitations, be held to run from January 17, 1924, the plaintiff’s right to maintain suit is barred. The plaintiff, however, contends that the Commissioner of Internal Revenue, subsequent to his disallowance of the claim for refund on January 17, 1924, reopened and reconsidered the same, and that the limitations on plaintiff’s right to institute and maintain suit began to run on June 2, 1927, the date on which the Commissioner, after reconsideration, finally notified plaintiff that the action previously taken in respect to- the claim for refund was sustained.
Although the statute makes no specific provision for the reopening and reconsideration of a claim for refund that has been disallowed by the Commissioner, the long-continued practice of the Treasury Department has been to reopen and reconsider claims disallowed in a proper case within the time allowed by the statute for bringing suit, and the regulations (T. D. 3240, October 31, 1921, 5 C. B. 313) provide for -reconsideration. The authority of the Commissioner to reopen and reconsider a claim for refund that has been disallowed has been recognized; by the court in Mobile Drug Co. v. United States, 39 Fed. 940, and McKesson & Robbins, Inc., v. Edwards, 57 Fed. (2d) 147. In these cases it was held, and we think properly, that when the Commissioner enters upon a reconsideration of the merits of a case his decision for the purpose of the statute of limitations for bringing suit is in abeyance until he has reached his final conclusion. The statute impliedly gives the Commissioner the authority to reopen and reconsider *544 bis action in disallowing a claim for refund, in order to correct any errors or mistakes that may have been made in such action, if he does so within the period allowed by the statute for bringing suit upon his first action. There is nothing in the statute which prohibits the Commissioner from reopening and reconsidering a claim for refund that has been disallowed, and the purpose of the statute in requiring that the Commissioner be given an opportunity to correct any errors or mistakes that may have been made in the decision of a case before suit is brought is sufficient to sanction a new hearing and a reconsideration by the Commissioner of his decision disallowing a claim. The question for decision is whether the Commissioner did in fact reopen and reconsider the refund claim subsequent to its disallowance by him on January 17, 1924, and within the time when he had the authority to take such action.
The plaintiff on January 26, 1925, within the two-year period following the rejection of the refund claim, filed with the Solicitor of the Bureau of Internal Revenue a sworn statement of facts relating to its rejected claim for refund. This sworn statement of facts was filed with the Solicitor after an authorized agent of the plaintiff had held a personal conference with bureau officials in reference to the matter. On November 9 following, plaintiff’s attorney-in-fact wrote the Solicitor, referring to the two previous conferences held with him in respect to the pending claim, also calling his attention to the letter and statement of facts in reference thereto filed on January 26, 1925, and stating that information as to the Solicitor’s conclusion in the matter would be greatly appreciated. The Solicitor replied on November 16, 1925, saying:
“This will acknowledge your letter in the matter of J. E. Ervine & Company, in which I have taken up- with Mr. Marrs, who has the case in charge, an early determination of the decision of the office. I hope we can give you something definite in the near future.”
On January 12, 1926, the Solicitor again wrote plaintiff’s attorney-in-fact requesting specific information and propounding four interrogations bearing directly upon the claim. The plaintiff on February 24, 1926, replied directly *545 to this letter and furnished the Solicitor full and detailed information in respect to the matter inquired about.
• On November 8, 1926, plaintiff again wrote the Solicitor saying:
“ Under date of February 24,1926, we replied to your c'omi-munication dated January 12th, your file SOL:R, It was our hope that with the inf ormation. which was furnished, your office would be able to advise us of your conclusions. While in Washington last June our Mr. McCullough called at your offices and discussed, in a general way, the matter with your Mr. Marrs, and was promised something definite from you within thirty or sixty days from that date. We have not received this advice.”
The Solicitor replied to this letter on April 22, 1927, and said:
“ In this connection you are informed that this office has given the case careful consideration in connection with your communication of February 24, 1926. This communication does not, however, contain any further or additional evidence than was already before this office when the letter of October 13, 1924, was written to you. This office has, therefore, decided that you have not. presented such additional evidence as will warrant a reversal of the action taken by the Income Tax Unit. The case has, therefore, been returned to the unit with advice to that effect.”
Thereafter, on June 2, 1927, the Commissioner of Internal Revenue notified plaintiff by letter that the previous action in rejecting the claim for refund was sustained: The Commissioner said: :
“ Reference is made to a letter from yóur representative, Mr. J. W. McCullough, dated February' 24, 1926, in reply to office letter of January 12, 1926, relative to the rejection of your claim for refund of income taxes assessed for the year 1917. * * *
“ You are advised that the statements contained in the letter of February 24, 1926, have been considered. Since no additional, evidence was contained therein, the action previously taken is sustained.”
When the Commissioner, upon application made after a decision disallowing a claim, enters upon the consideration of the merits of a case in the manner in which he did' in this instance and later renders a final decision thereon, the tax *546 payer lias two years thereafter under section 3226 of the Revised Statutes within which to bring suit. The facts in this case sustain the contention that the Commissioner, subsequent to his disallowance of the claim for refund on January 17, 1924, reopened and reconsidered the same and that his final decision in the matter was in abeyance until June 2, 1927, the date on which he notified the plaintiff that the action previously taken by him was sustained.
Where the Commissioner, after the disallowance of a claim for refund, merely answers letters of inquiry, or refuses and denies an application for reconsideration without going into the case or reconsidering it on its merits, it cannot be held that there has been a reconsideration of the case. Hickman v. United States, 47 Fed. (2d) 328. In the present case the Commissioner did far more than to refuse or deny an application for reconsideration and more than to reassemble and reexamine the files of his office to ascertain whether there was any basis for plaintiff’s request to have the case reopened and reconsidered. He received and considered a sworn statement of facts submitted by the plaintiff in support of his request for a reconsideration of the claim. Not only that, but plaintiff was assured both by letter and in personal interviews with the solicitor and other officials of the Bureau, that Mr. Marrs was in charge of the case and that an early decision was hoped for. Further and more important, the plaintiff was called upon by the Bureau on January 12, 1926, to furnish certain specific and highly pertinent information in reference to the claim, which information he promptly furnished. This information was requested of the plaintiff within less than a week of the time his right to institute suit on the disallowed claim of January 17, 1924, would expire. Plaintiff undoubtedly had every reason to believe that the rejected claim for refund was then being considered by the Bureau upon the merits. It would be an unreasonable and exceedingly harsh rule that would require plaintiff to go to the expense of employing counsel and instituting suit to protect against the running of the statute at a time when the Bureau was calling for and considering additional information in reference to his claim. He had a right to suppose that final decision of the Commissioner would be upon the *547 merits of bis claim, as we think it was. Furthermore, the Commissioner’s letter of June 2, 1927, notifying plaintiff that the previous action of the Commissioner in rejecting the claim was sustained, explicitly stated, “ You are advised that the statements contained in the letter of February 24, 1926, have been considered' * *
The facts in the instant case bring it within the rule announced in Mobile Drug Co. v. United States, supra, and McKesson & Robbins, Inc., v. Edwards, supra. We hold, therefore, that the Commissioner of Internal Revenue reopened and reconsidered plaintiff’s claim for refund, and that the statute of limitations on the right to bring suit began to run from June 2, 1927, the date of his final decision in the matter.
The plaintiff is entitled to recover, and it is ordered that judgment be entered in accordance with our conclusion of law.
Whaley, Judge; LittletoN, Judge; and GreeN, Judge, concur.
Booth, Chief Justice, did not hear this case, on account of illness, and took no part in its decision.