UNITED STATES ex rel. BOTANY WORSTED MILLS v. HELVERING, Com'r of Internal Revenue.

No. 6561.

United States Court of Appeals for the District of Columbia.

Argued October 6, 7, 1936.

Decided March 8, 1937.

J. S. Y. Ivins and A. H. Conner, both of Washington, D. C., for petitioner.

Robert H. Jackson and Frank J. Wideman, Asst. Attys. Gen., and Sewall Key, Frank J. Ready, Jr., and Norman D. Keller, all of Washington, D. C., for Commissioner of Internal Revenue.

Before ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, J.

An appeal from a final judgment of the District Court. In March, 1933, petitioner applied in the court below for a mandamus to the Commissioner of Internal Revenue commanding him to act upon petitioner's claim for refund of its income and profits taxes for the year 1919 on the merits, and to decide whether petitioner is entitled to special relief under sections 327 and 328 of the Revenue Act of 1918 (40 Stat. 1057, 1093) and, if he should find that it is entitled to special relief, to certify to the proper authorities the overpayment ascertained to be due.

There was a prayer for other relief which we need not notice.

The District Judge in 1935 declined to issue the writ and dismissed the petition. The facts are these:

Petitioner is a New Jersey corporation. Its property was taken over by the Alien Property Custodian in 1918 and was managed by him until 1923. Tax returns for the years ended November 30, 1917, 1918, and 1919, were prepared and filed under the direction of the Custodian, "in collaboration with the Treasury Department," and the taxes were paid. Claims for refund for the three years were duly filed within the statutory period. The basis was that petitioner was entitled to a special assessment under the provisions of section 210 of the Revenue Act of 1917 (40 Stat. 300, 307) and sections 327 and 328 of the Revenue Act of 1918. Petitioner filed briefs with the Commissioner in support of the claims, attempting to demonstrate abnormalities of capital. In April, 1929, an official letter to the taxpayer announced that a special assessment was allowed as to 1918 taxes and a $650,000 overassessment determined;[1] but also announcing that after consideration and review the application for special assessment for 1919 was denied because an audit showed no gross disproportion between the

---

[1] Later special assessment was allowed for 1917 on the same ground.

tax paid and the tax computed by comparison with representative corporations. The letter announced that the denial would be officially reported to the proper collector unless within thirty days petitioner gave notice of a desire (a) for a hearing or (b) to file protest. Petitioner filed protest within the thirty days, challenging the Commissioner's audit and asking review of the denial, but a few days thereafter formal rejection of the ·1919 claim was made. Notwithstanding this action, petitioner's protest was referred by Commissioner to the special advisory committee of the Bureau, and thereafter many conferences, covering a period of about two years, were had with the committee, with the Commissioner, and with the Under Secretary of the Treasury. In 1933 the special advisory committee reported to the Commissioner, recommending that the application to reopen be denied and the case be considered as closed—not on the merits, but only for the reason that the general counsel of the Bureau had advised that a refund would be erroneous under the provisions of section 608 of the Revenue Act of 1928 (26 U.S.C.A. § 1674 and note). The report was approved by the Commissioner, and on March 3, 1933, a letter to this effect was mailed to petitioner. The letter reads as follows:

"An examination of the facts discloses that the claim in question was disallowed after the enactment of the Revenue Act of 1928 (disallowed on schedule dated May 31, 1929) and the period of limitation for bringing suit as provided in section 1113 of the Revenue Act of 1926 expired on May 31, 1931 (two years after the disallowance of the claim), without suit having been filed by the taxpayer.

"Under such circumstances reopening of the claim is specifically prohibited by Paragraph II of T.D. 4234, which provides that:

" 'A case in which the claim was disallowed on or after May 29, 1929, is governed by Section 608 of the Revenue Act of 1928, and no such case will be reopened if, under the provisions of such section, a refund would be considered erroneous.'

"Under Section 608 a refund 'shall be considered erroneous * * * in the case of a claim filed within the proper time and disallowed by the Commissioner after the enactment of this Act if the refund was made after the expiration of the period of limitation for bringing suit—unless within

such period suit was begun by the taxpayer * * *.'

"The request for consideration is accordingly denied and the case henceforth will be considered as finally closed."

The questions involved are:

First, whether the period of limitation specified in section 608 of the Revenue Act of 1928 applies *at all;*

Second, whether, even if it does apply, the claim for refund was reopened after rejection by reconsideration on the merits, and in that event whether such action tolled the statute;

Third, whether in that case, if it is held that the claim is still open and undecided, petitioner is entitled to a writ of mandamus to require Commissioner to take final action.

We shall discuss these propositions in the order in which we have placed them.

1st. Does section 608 apply in a case in which the courts have no jurisdiction of a suit for refund based upon the special assessment provisions of the 1918 act?[2]

These are the applicable statutes:

Revenue Act of 1918:

"Sec. 327. That in the following cases the tax shall be determined as provided in section 328:

"(a) Where the Commissioner is unable to determine the invested capital as provided in section 326;

"(b) * * *

"(c) Where a mixed aggregate of tangible property and intangible property has been paid in for stock or for stock and bonds and the Commissioner is unable satisfactorily to determine the respective values of the several classes of property at the time of payment, or to distinguish the classes of property paid in for stock and for bonds, respectively;

"(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. * * *

---

[2] Williamsport Co. v. United States, 277 U.S. 551, 48 S.Ct. 587, 72 L.Ed. 985.

"Sec. 328. (a) In the cases specified in section 327 the tax shall be the amount which bears the same ratio to the net income of the taxpayer * * * for the taxable year, as the average tax of representative corporations engaged in a like or similar trade or business, bears· to their average net income * * * for such year."

Revenue Act of 1926 (44 Stat. 9, 116):

"Sec. 1113. (a) Section 3226 of the Revised Statutes, as amended, is re-enacted without change, as follows:

"'Sec. 3226. No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of five years from the date of the payment of such tax, penalty, or sum, unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates. The Commissioner shall within 90 days after any such disallowance notify the taxpayer thereof by mail.'"

Revenue Act of 1928:

Sec. 608. "A refund of any portion of an internal-revenue tax * * * [made after the enactment of this Act (May 29, 1928)], shall be considered erroneous—

"(a) * * *

"(b) in the case of a claim filed within the proper time and disallowed by the Commissioner [after the enactment of this Act], if the refund was made after the expiration of the period of limitation for filing a suit, unless—

"(1) Within such period suit was begun by the taxpayer, or

"(2) Within such period, the taxpayer and the Commissioner agreed in writing to suspend the running of the statute of limitations for filing suit from the date of the agreement to the date of final decision in one or more named cases then pending before the Board of Tax Appeals or the courts."

The argument for the government, re the applicability of the last-quoted statute to a case of special assessment, is that the statute is broad in its terms and clearly expresses the legislative intent to protect the Treasury by a statute of repose against disbursements on account ·of stale or outlawed claims for tax overpayment. The Commissioner says that section 608 provides only two exceptions to the rule, (1st) unless within two years after rejection of the claim suit is begun by the taxpayer; or, (2nd) unless within that period the taxpayer and Commissioner in writing agree to suspend period of limitations. On this basis the Commissioner insists that, since Congress has not excepted special assessment cases, a court may not. Hence, he argues that section 608 is a limitation in all cases upon the right of the Commissioner to make a refund and of the taxpayer to compel one by suit after the prescribed period has expired.

Petitioner, on the other hand, insists that section 608 does not affect its claim and cannot have been intended by Congress to apply to claims for refunds under the special assessment provisions of sections 327, 328, because on a claim filed under these sections there is no right to sue either within two years or at any other time.

Section 608, as we have seen, makes a refund erroneous if made after the period of limitation for filing suit—i. e., two years after rejection—unless (1) within such period suit was begun, or (2) there was written agreement to toll the statute. The Supreme Court held in the Williamsport Case, supra, that the highly technical knowledge necessary for determination of the circumstances under which special assessment under sections 327 and 328 is applicable, gave to Commissioner exclusive jurisdiction to decide in what cases those sections applied, and that his determination in this respect was not open to review by the courts in the absence of fraud or irregularity. The case, in effect, decides that no suit or proceeding for refund based on a claim for special assessment shall be maintained in

any court. This being granted, it is clear that petitioner after the filing of the claim and while it was pending—or in the event of its rejection—was wholly and entirely without any remedy by suit at law. And on the strength of this, petitioner argues that there could not be, in the nature of things, a period of limitations based on the filing of a suit—where in no circumstances could a suit be filed; that the time limit within which to litigate a litigable claim obviously has no application to a nonlitigable claim; and hence insists that section 608 is here inapplicable.

The question is interesting, and we notice it in passing to remark that it would, perhaps, be difficult to sustain the rule that, when the courts wholly lack jurisdiction to entertain a suit, there can be a statutory period of limitation for the bringing of the suit. But, as we think the case can be decided on the second proposition, we express no opinion on the first.

From what has just been said, it will be seen that in our view the case must turn on whether there was in fact a reopening by the Commissioner. If it was not reopened, the official notification of 1929 was a denial of the claim, is conclusive of the merits, and under the rule in the Williamsport Case not subject to review in any court. On the other hand, if there was reopening and reconsideration, and if as a result, the period of limitations in section 608 does not start until final rejection, and if there has been no final rejection, then clearly section 608—even under the government's construction of that statute—will not bar a refund if the Commissioner should now decide it is proper.

■ In saying this much, however, we are laying aside the last sentence of Treasury Decision No. 4235 [3] as invalid—as we think it clearly is. Watts v. United States (C. C.A.) 82 F.(2d) 266, 267; American Safety Razor Corporation v. United States, 6 F.Supp. 293 (Ct.Cl.), certiorari denied 293 U.S. 599, 55 S.Ct. 116, 79 L.Ed. 692..

And this brings us to the question whether there was a reopening and reconsideration. And this in turn presents these problems:

(A) Does the evidence admitted at the trial establish sufficient facts to show reconsideration?

(B) If not, was there error in the exclusion of testimony offered which, if admitted, would have been sufficient?

As we have seen, the refund claim was rejected May 31, 1929. Shortly thereafter petitioner, as it alleges, called the attention of Commissioner to the fact that the claim had been rejected without being properly considered on the merits and the Commissioner on his part verbally agreed to have the claim reconsidered and did in fact thereafter refer it for that purpose to the special advisory committee of the Bureau. The committee then proceeded to consider the merits. Several conferences were held directly between the committee and counsel for the taxpayer, and briefs were filed, received, and considered. Petitioner, in the court below, offered to prove that the chairman and one of the conferees of the committee at one or more of the conferences stated that from their study they had determined that petitioner was entitled, for 1919, to substantial relief and to a determination of overpayment based upon the fact that abnormality existed, and also that the rate of profits tax paid was in excess of the average rate of profits taxes determined by the Bureau for comparable and representative corporations. Thereafter conferences were held between Mr. Burnet, Commissioner of Internal Revenue, his assistants, and representatives of petitioner. At one of the conferences the Bureau was represented by the Commissioner, the chairman of the advisory committee, and a representative of the general counsel's office, and the latter then for the first time raised the question whether section 608, without regard to the merits, prevented a refund. But notwithstanding this the Commissioner thereafter, assuming that sections 327 and 328 of the act were applicable, said that the case would show a refund of approximately $300,000.00 and interest. And the chairman of the advisory committee likewise agreed that there was a substantial adjustment due petitioner. It is also alleged and not denied that the matter was then referred to Under Secretary Ballantine of the Treasury, who held conferences with counsel and representatives of petitioner, and he in turn stated— obviously on consideration of the merits— that he recognized there was a substantial amount due petitioner by way of relief under special assessment. But in a later con-

---

[3] No reopening or application for reopening will extend the period within which suit must be brought, nor will a reconsideration of a claim be considered as a reopening.

ference, Mr. Ballantine said he had reached the opinion that section 608 applied and that its application would preclude the taxpayer from presenting a case in court for determination upon the merits as to the proper amount of the refund. And, finally, the special committee in March, 1933, made a recommendation to the Commissioner that the application to reopen the claim be denied on the ground that section 608 of the Revenue Act of 1928 would make a refund erroneous because, as we have seen, of failure of petitioner to bring a suit, as provided in the statute, within two years of the original rejection. And the Commissioner in his March 3d decision laid his refusal to reconsider on that ground alone.

■ In the hearing below, counsel for petitioner introduced as witnesses the chairman of the special advisory committee, a member of the advisory committee, and the former Commissioner of Internal Revenue, by whom he offered to show that the committee, acting under the directions of the Commissioner, and the Commissioner himself did in fact consider the merits of petitioner's claim for special assessment and did in fact determine the rate of excess profits taxes which would be properly applicable for the year 1919. This evidence was objected to by the present Commissioner and ruled out by the District Judge on the ground that only the official documentary record of the Department could be considered as showing what action was taken or what did happen during the pendency of the petition before the Bureau. But the purpose of petitioner, in offering this evidence, was not to prove that the Commissioner ever gave notice of refund or official allowance, but only to show that the claim was in fact reconsidered on its merits. The evidence was not offered to impeach any official act or to prove any official act. The proof went merely, as we have said, to a question of fact, namely, was there consideration on the merits? We know of no good reason why the evidence was not admissible.

In United States v. Fillebrown, 7 Pet. 28, 8 L.Ed. 596, there was an action by the United States to recover a sum of money asserted to be owing by defendant on settlement of his accounts as secretary of the commissioners of the naval hospital fund. Defendant set up as a defense that there was owing him a sum for services to the board not included in his duties as secretary. The Secretary of the Navy was one of the commissioners. He made a deposition, in evidence at the trial, that the Board had approved the defendant's action in taking up the extra duties, and that the board had allowed the extra salary set up as a defense. The government requested a charge that if the board had never passed a resolution for the payment of the amount or had never settled or sanctioned the claim, then the defendant could not assert it against the United States. The charge was refused. The Supreme Court said (at page 47 of 7 Pet., 8 L.Ed. 596) that a sufficient answer to the intimation that the evidence must be written was that no objection was made to it, but that if one had been made it should have been overruled, for proceedings of such boards need not be in writing to be valid: "Considering then the testimony of Mr. Southard as competent evidence to establish the acts of the board, it shows very clearly, that the services rendered by the defendant, and for which he claims compensation, were not embraced within his duties as secretary of the board; but were extra services, for which the commissioners agreed to make him compensation."

In Riverside Township v. Stewart (C. C.A. 3, 1914) 211 F. 873, there was a suit by a contractor against a municipal corporation. One of the items involved was whether an extension of time for completion had been granted. The records of the township showed no extension. Over objection, plaintiff was allowed to prove by parol evidence that the township board at a regular meeting had granted an extension; and that the extension was not recorded. It was held that the plaintiff having acted under the verbal agreement and there being no bad faith, the court committed no error in admitting the testimony to show that proper corporate action had been taken to extend the time. See, also, Whittaker v. Brannan (C.C.A.) 252 F. 556.

■ We think on principle the evidence should have been admitted—though, without it, petitioner cannot be said to have made out a case. When considered as admitted, we think it clearly establishes that the whole question—i. e., the request for special assessment—was open, and that the effect of what happened was to toll the statute and to leave the claim undecided and pending. In this view it was then within the power of the Commissioner—on reconsideration—to adhere to his decision or to reverse it or to modify it. The question then

arises whether the Commissioner's letter of March, 1933, declining to grant relief on the ground, solely, that he had no authority to do so was a final rejection not reviewable in this proceeding. If the limitations of section 608 were inapplicable to a claim for refund made under the provisions of sections 327, 328—which we have discussed but as to which we have expressed no opinion—it is apparent Commissioner's decision that he had no jurisdiction was erroneous; but even if section 608 does apply, Commissioner's decision, as we think, was erroneous, if, as we think, the result of the reopening and reconsideration tolled the running of the statute, pending final action on the claim. Precisely this was decided by the Second Circuit in Watts v. United States, supra. In that case Judge Chase said: "In McKesson & Robbins v. Edwards, 57 F.(2d) 147, we had before us the effect upon the time for bringing suit of the action of the commissioner in reopening a refund claim after having rejected it. There, as here, there had been a reconsideration on the merits and not merely a determination as to whether or not to reconsider. We held that while the commissioner was reconsidering the claim was to be treated as sub judice; the limitation of the statute not beginning to run until the decision upon reconsideration." Other cases to the same effect are Southwestern Oil & Gas Co. v. U. S. (D.C.) 29 F.(2d) 404, affirmed (C.C.A.) 34 F.(2d) 446, certiorari denied November 25, 1929, 280 U.S. 601, 50 S.Ct. 82, 74 L.Ed. 646; Jones v. United States (Ct.Cl. 1933) 5 F.Supp. 146; American Safety Razor Corporation v. United States (Ct. Cl.1934) 6 F.Supp. 293; Pierce-Arrow Motor Car Company v. United States (Ct. Cl.1935) 9 F.Supp. 577.

Applying the rule of the cases cited to the instant case, it is clear that the Commissioner's conduct in reconsidering the claim left open the question of the right to refund, until he should finally decide that question. His action was the equivalent of saying, "As a result of your protest I will consider the question in the light of new facts and in the meantime and until I reach a conclusion my former action will stand for naught." And since, as now appears, he has never decided the question but holds that he may not, because of lack of jurisdiction, the question for us is: Has this court the power to command him now to take action? It cannot be doubted that we have no jurisdiction to require the Commissioner to decide the claim in a particular way. And this is true because the determination whether the taxpayer is entitled to the special assessment is confided by Congress to the Commissioner with a right of review, as the Supreme Court said, to the Board of Tax Appeals but no farther. And on such review the Board acts not as a court but as an administrative agency, and neither this court nor any other court has any jurisdiction to review the discretion of the Commissioner. Williamsport v. United States, supra; Blair v. Machine Co., 275 U.S. 220, 48 S.Ct. 87, 72 L.Ed. 249; Cramer & King Company v. Commissioner (C.C.A.) 41 F. (2d) 24; Standard Rice Company v. Commissioner (C.C.A.) 41 F.(2d) 481.

But the question we have suggested is narrower. In effect it amounts to this: Is there a positive duty on the Commissioner, on the filing of a petition for refund, to consider the petition and either grant it or deny it?

Section 327 of the Revenue Act of 1918 provides that when the Commissioner is unable to determine the invested capital he shall fix the tax on the basis of representative corporations engaged in like or similar business, etc. Petitioner says that the Commissioner in this case was and is unable to determine its invested capital, and that in sundry conferences on its petition for relief he has admitted as much and likewise has admitted that, as a result, petitioner had overpaid its tax.

And section 284 of the 1926 Revenue Act (44 Stat. 66) provides that when there has been overpayment of tax the amount of such overpayment shall be credited against the taxes due from the taxpayer and any balance of such excess shall be refunded immediately to the taxpayer.

If we consider these statutory provisions as meaning, as we think we must, that in a case in which the taxpayer claims that he is entitled to a special assessment there is imposed on the Commissioner the duty of determining the validity of the claim, it would seem to follow that upon refusal by the Commissioner for an invalid reason to consider the claim, there should be jurisdiction somewhere to compel him to do so. And since admittedly petitioner has no other remedy, mandamus would seem to be proper. If we are correct in this, then the next and only remaining question is whether in the rejection of 1929 or 1933 the Commissioner has in fact acted.

Unquestionably the 1929 letter of the Commissioner was a rejection of the claim; but, as we think this rejection was set aside and superseded by the subsequent act of the Commissioner in granting a rehearing and reconsideration, the question comes down to the later rejection. And that, as we have seen, is based exclusively upon a claim on the part of the Commissioner of lack of right, because of statutory time limitations, to consider and pass upon the merits of the claim. We have said that in our opinion this conclusion of the Commissioner is wrong and that the matter was open for decision. He might have refused to make the special assessment without stating the grounds of his refusal, and that would have ended the matter. And so if his final letter should be construed to say, "I have considered your case and I adhere to my former decision," this court would be without jurisdiction to inquire into or question his reasons. But in our view that is not the effect of what he did. Instead, the letter, considered in the light of all that had preceded, should be read to say, "Though I have considered your petition, I am without authority to grant it because you did not, within two years after my first rejection, bring suit to stop the running of the statute while I was considering it further." In these circumstances, we think, though the question is by no means without difficulty, that it would be a harsh rule to say that mandamus may not be invoked to afford petitioner the limited relief it seeks. As the Supreme Court said in Work v. U. S. ex rel. Rives, 267 U.S. 175, 184, 45 S.Ct. 252, 255, 69 L.Ed. 561: "There is a class of cases in which a relator in mandamus has successfully sought to compel action by an officer who has discretion concededly conferred on him by law. The relator in such cases does not ask for a decision any particular way but only that it be made one way or the other. Such are U. S. ex rel. Louisville Cement Company v. Interstate Commerce Commission, 246 U.S. 638, 38 S.Ct. 408, 62 L.Ed. 914; and Interstate Commerce Commission v. U. S. ex rel. Humboldt S. S. Company, 224 U.S. 474, 32 S.Ct. 556, 56 L.Ed. 849. They follow the decision in Commissioner of Patents v. Whiteley, 4 Wall. 522, 18 L.Ed. 335. They are analogous to Hohorst, Petitioner, 150 U.S. 653, 14 S. Ct. 221, 37 L.Ed. 1211; Parker, Petitioner, 131 U.S. 221, 9 S.Ct. 708, 33 L.Ed. 123; Ex parte Parker, 120 U.S. 737, 7 S.Ct. 767, 30 L.Ed. 818, and others which hold that mandamus may issue to an inferior judicial tribunal if it refuses to take jurisdiction when by law it ought to do so, or where, having obtained jurisdiction, it refuses to proceed in its exercise." And again in U. S. ex rel. Louisville Cement Company v. I. C. C., 246 U.S. 638, 38 S.Ct. 408, 409, 62 L.Ed. 914, where it is said: "That the Supreme Court of the District of Columbia, in a proper case, has power to direct the Commission by mandamus to entertain and proceed to adjudicate a cause which it has erroneously declared to be not within its jurisdiction is decided in Interstate Commerce Commission v. United States, 224 U.S. 474, 32 S.Ct. 556, 56 L.Ed. 849. If the Commission did so err, on the authority of many decisions, among them Ex parte Russell, 13 Wall. 664, 20 L.Ed. 632; Ex parte Schollenberger, 96 U.S. 369 [24 L.Ed. 853]; Re Parker, 131 U.S. 221, 9 S.Ct. 708, 33 L.Ed. 123; Re Grossmayer, 177 U.S. 48, 20 S.Ct. 535, 44 L.Ed. 665; and Interstate Commerce Commission v. United States, 224 U.S. 474, 485, 32 S.Ct. 556, 56 L.Ed. 849, the courts may correct such error on a petition for mandamus, where, as in this case, the erroneous decision cannot be reviewed on appeal or writ of error."

From what we have said, it follows that in our opinion the lower court was in error in rejecting the proffered evidence we have detailed. And, considered as introduced, we think the petition for mandamus should have been granted, not to require the Commissioner to make any particular decision, nor to limit his discretion by the action of his predecessor for the years 1917–1918 which, so far as we know, may have been altogether wrong, but only to require him to determine and announce his final decision on the merits of the claim. Even now he may end it all, or at any time during the pendency of this controversy he might have ended it by rejecting the claim with or without more for, as the Supreme Court has said, he is not required to give his reasons. But even this wide amplitude is not satisfied by a mistaken declaration of lack of power. In this view he may and, as we think, should take action. If the claim is without merit, it is needless to say he should reject it and, of course, that is what he will do, and that will close the case. But if, on the other hand, he concludes there is merit, as petitioner says a former Commissioner determined, it would be a bad rule which would deny relief on the theory that

a decision on the ground of lack of power to decide, is in effect a rejection on the merits. True enough, Congress has made the relief prayed for subject to the unquestionable discretion of the Commissioner, but has made the running of the statute to commence as of its exercise and not before. Here, as we have seen, the Commissioner failed to appraise properly the effect on his original rejection of his later reconsideration and, mistakenly regarding his discretion as exhausted, shut the door in the taxpayer's face. This, it seems to us, was wrong, for in our opinion Congress, having created the right and provided the method by which to invoke it, intended thereby to insure a decision on the right of the case; and if we are correct in this mandamus is the proper remedy because it is the only remedy. A denial would make the writ practically valueless. See Roberts v. United States, 176 U.S. 221, 231, 20 S.Ct. 376, 44 L.Ed. 443.

We are, therefore, of opinion that, while the court below was correct in refusing to admit evidence as to proceedings in the Bureau in relation to the claims for the years 1917 and 1918, the court erred in rejecting the evidence of the witnesses O. R. Folsom-Jones, Joseph K. Moyer, and David Burnet; and for that reason the judgment below is erroneous and should be set aside and a new hearing granted and such further proceedings had consistent with this opinion.

Reversed and remanded for proceedings in accordance with this opinion.